## HENRY H. HAMLIN *vs.* CITY OF NORWICH.

Certain heirs owning in common a tract of land in the city of Norwich in 1851, submitted the partition of it to arbitrators, who awarded that it be divided into eighty-six building lots, according to a plan of streets and lots annexed to the award, which they distributed among the heirs, the award containing the following provision : " The lines of those lots which are bounded in the plan by any street shall extend to the center of the street, and the proprietors and those in possession under them shall have free right of way over said streets in the same manner as if such streets were public highways." The streets on the plan were of the ordinary width of public streets. The plan was certified by the arbitrators and lodged in the town clerk's office. The parties immediately after executed quitclaim deeds to one another in accordance with the award, using in the deeds the same language used by the award as to the streets and the rights in them. It was not expected by the parties that the property would be at once built upon, or that the streets would be at once needed and used. One of the streets, called on the plan Proprietors street, was closed by bars at the end where it connected with a public street, until 1865, when it was needed for convenient passage to a school house then built upon a connecting street, and it was accepted by a vote of the common council as a city street, after which time it was open to public use and was freely used by the public. In 1867 the petitioner purchased a lot on this street, his deed abutting him on "a street called Proprietors street," and soon after built a fence taking in a small portion of the street as laid out on the plan, though the portion enclosed had never been travelled upon by the public. Upon a petition for an injunction against the removal of his fence as an encroachment by the city, it was held—1. That although the arbitrators had no power to dedicate the land for public highways, yet that all parties must have contemplated public highways and not private streets, as an ultimate result. 2. That when the petitioner purchased his lot Proprietors street had become a public highway. 3. That as a public highway its width was to be determined by the original plan of the arbitrators, and not by the actual public use.

BILL IN EQUITY, praying for an injunction against the removal, as an encroachment upon a city street, of a wall in front of the petitioner's premises ; brought to the Superior Court in New London county. The court found the following facts :

The lot of the petitioner, from the front of which the respondents claimed the right to remove the wall, was in the year 1851 a part of a tract of land lying within the city of Norwich, known as the Roath estate, and the undivided property of the heirs of Roswell Roath. On the 21st of June, 1851, the heirs submitted the matter of its partition and distribution among them to the arbitrament of James A. Hovey,

Lewis Hyde and Comfort D. Fillmore, the submission being so made as, with the award, to pass the title to the land, and on the 24th of July, 1851, the arbitrators made a written award, the material parts of which are as follows :—

. " For the purpose of making a fair and *just distribution of* the real estate of said deceased among the heirs, we have caused the said estate, excepting the old farm and the Breed lot, so called, to be divided into eighty-six lots, numbered from one to eighty-six inclusive, and a plan thereof to be made, which plan is made a part of this award, and contains upon its margin (for the purposes of identity,) a memorandum signed with our hands, and we do now distribute said real estate in manner and form following, that is to say :" (Here follows a distribution of the several lots, among which two lots, numbered 2 and 72, constituting the premises now owned by the petitioner, were set to Roswell W. Roath, one of the heirs, from whom they came, through sundry conveyances, to the petitioner.) " We do further award that the lines of those lots which are bounded on said plan by any street, avenue or lane, shall extend to the centre of such street, avenue or lane ; but the proprietors of any of the lots marked on said plan and those in possession under them, shall have a free right of way over and through said streets, avenues and lanes in the same manner they would have if such streets, avenues or lanes were public highways."

The plan referred to in the award was certified by the arbitrators by the following memorandum upon it, signed by them : " *Memorandum :* This plan is part of an award in writing this day published by us as arbitrators, dated July 24, 1851, distributing the real estate of Captain Roswell Roath, late of Norwich deceased, among his heirs, viz : [naming them,] pursuant to their submission, dated the 21st day of June, A. D. 1851. Norwich, July 25th, 1851."

The plan was then lodged in the office of the town clerk of the town of Norwich, by William L. Brewer, Esq., as " attorney for the heirs," with the following endorsement upon it, signed by him as their attorney :—" Plan of a part of the real estate of the late Capt. Roswell Roath of Norwich,

used by certain arbitrators chosen by the heirs of said deceased to settle and apportion said estate among the said heirs, and by said arbitrators made a part of their award. For the convenience of the parties in making deeds of their several lots, and for future reference if necessary, it has been agreed that this plan, together with a copy of said award, shall be lodged in the office of the town clerk of Norwich, and there remain."

All the heirs ratified and carried into effect the award of the arbitrators by executing to each other quitclaim deeds in conformity with the award, each of which deeds referred to the submission and award, and stated that the deed was made in accordance with the requirements of the award, and contained the following reference to the plan made by the arbitrators:—"A copy of which said submission and award, together with a plan or plot of a part of the real estate of the said deceased showing the lots set out to the several heirs and by said arbitrators made a part of their award, is deposited in the office of the town clerk of said town of Norwich." Each deed also contained the following clause:—" It is hereby understood and agreed, in further performance of the said award, that the lines of the lots hereby conveyed which are bounded on said plan by any street, avenue or lane, shall extend to the center of such street, avenue or lane; but the grantee of the lots hereby conveyed and those in possession under him, shall have a free right of way over and through said streets, avenues or lanes, in the same manner he or they would have if such streets, avenues or lanes were public highways."

The respondents claimed that a certain street upon the plan then called Proprietors street, but since called Park street, had, by means of the award and deeds, and the facts connected therewith, been dedicated to the public as a highway, and that such dedication had been accepted by the public, and the respondents claimed the right to remove, and before the commencement of the suit had threatened to remove, all obstructions within the limit of the street as surveyed on the plan. If Proprietors street is a public highway according to the lines of the survey, then the petitioner's wall at the

corner of Cliff and Proprietors street is about eleven inches on the latter street, and his fence on that street is from eleven inches to two feet on the street its entire length.

The respondents admitted their intention to remove the petitioner's wall and fence to this extent. Such removal would be a very serious injury and inconvenience to him, and the petition is brought to prevent that injury from being inflicted.

The first question in the case was, whether the award, deeds and other instruments referred to, did in legal construction dedicate the streets and avenues therein mentioned as public highways, as the respondents claimed, or whether, as the petitioner claimed, the streets and avenues were by these instruments made mere private ways for the use and benefit of the parties to the deeds, their heirs and assigns, to be open indeed to them as highways, but not to be public to all intents so as to authorize the city to open, construct and manage them as highways.

The next question was, whether, if the dedication was to the public, the public had accepted the dedication at all or within a reasonable time; and on this question it appeared in evidence that the Roath estate in 1851 was held in common by the heirs and that it was not expected by them that the property would be at once built upon or that the streets and avenues would at once be needed and used. Some of them still remain unopened, others have been from time to time opened to the public in substantial conformity with the arbitrators' plan, as lots were sold and built upon. Proprietors street remained for many years after 1851 no otherwise open to the public than by means of a pair of bars at the entrance into it from Cliff street. Through these bars a passage way was somewhat used to the rear lots, but it was never fenced out as a street until quite recently. As late as 1864 a considerable portion of the street was cultivated as a garden, but in 1865 a school house was erected on Roath avenue, and from that time the street was open to public travel, but still only along its center. The travel never actually came on the strip of land now enclosed by the petitioner. The petitioner built his wall and fence soon after his purchase, which was of one

Myers, on the 30th of August, 1867. By his deed he was bounded easterly on "a street called Proprietors or Park street." A deed also of an adjoining lot taken by the petitioner on the 6th of July, 1868, describes it as bounded "on Park street."

On the 2d of October, 1865, the city passed a vote accepting and laying out the street in question as a public street. The description of the bounds and survey of the street in the vote varied between one and two feet from the lines of the arbitrators' plan. Objection was made to receiving the vote in evidence, on the ground that the dedication of a highway could not thus be accepted, and the evidence was received subject to the exception.

Upon these facts it was claimed by the petitioner that there had been no dedication to the public accepted by the public, on the ground that these facts indicated no acceptance by user by the public beyond the actual line of travel, and that the acceptance by vote was a nullity. The respondents claimed that the acceptance by travel, though only upon a part, was to be treated as an acceptance by travel of the highway up to the line indicated by the survey and plan, and that the acceptance by vote was valid.

The plaintiff also claimed that the grantees of Roswell W. Roath had a right, at any time before acceptance by the public, to revoke all or part of the dedication.

On this subject the court found that the street remained unopened to the extent, and in the manner, and during the time before stated, but did not find any act done with intent to revoke the dedication until after the street was open to public travel, nor till after the vote of the city accepting and laying it out had been passed.

The parties were in controversy on a question of boundary, whether the lot No. 72 did not in fact originally extend more than fifty-eight and a half feet on Cliff street. It appeared that the arbitrators' plan and survey were in some respects erroneous, and that upon a careful re-survey, some of the lots, avenues and streets had to be somewhat changed, but that there was no error or mistake in the plan and survey of lots Nos. 72

and 2. It did however appear that Proprietors street, as described in the city vote, and as now fenced on the easterly side thereof, was somewhat changed from its location on the arbitrators' plan, by which change the northerly part of the street was extended one or two feet upon the petitioner's premises to his injury. No authority for making such change was shown or claimed, and the respondents did not claim any right as against the petitioner to open the street otherwise than agreeably to the arbitrators' plan. A written notice of the city, served upon the petitioner soon after he erected his wall, required him to conform his fences to the lines indicated in the city vote.

The petitioner insisted that, upon these facts, he was entitled to a decree in his favor for an injunction. The respondents insisted that upon the facts the city might rightfully remove the petitioner's wall, and also claimed that, even if the petitioner was right in his claims in regard to title, the remedy by injunction was not appropriate or called for.

Upon these facts the case was reserved by the Superior Court for the advice of this court.

*A. F. Park* and *Bolles*, with whom was *Wait*, for the petitioner.

1. Proprietors street has never been dedicated to the public, and consequently the respondents have no right to the premises described in the petition. To constitute such a dedication, it must be unequivocally and satisfactorily proved. Washb. on Easements, 133; 2 Smith Lead. Cases, (H. & W. ed.) 209; *Noyes* v. *Ward*, 19 Conn., 250. The survey and mapping of the land was not evidence of an intent to dedicate. *United States* v. *Chicago*, 7 How., 185; 2 Smith Lead. Cases, (H. & W. ed.) 209; *Bailey* v. *Copeland*, Wright, 150; Washb. on Easements, 148. There was no act of the proprietors dedicating this street to the public. The arbitrators did not do so, nor had they the power to dedicate it even if such was their intent and desire. The award and the several deeds provide only for a private way, for the use of the proprietors and their assigns, and the lodging of the award

and plan in the town clerk's office was not under any provision of the award, nor for public convenience, but merely for the convenience of the parties interested. The mention of the street, in the subsequent conveyances to Myers, Hamlin, and others, furnishes no ground for inferring a dedication. *Jacobs* v. *Kruger*, 19 Cal., 411.

2. In order to dedicate a street to the public, it must be accepted by the public. No acceptance was shown in this case before revocation. *Green* v. *Town of Canaan*, 29 Conn., 157 ; *Guthrie* v. *Town of New Haven*, 31 id., 308 ; Washb. on Easements, 145 ; *Remington* v. *Millerd*, 1 R. Isl., 93 ; *Holdane* v. *Trustees of Cold Spring*, 21 N. York, 474. The vote of the city accepting the street was not evidence of acceptance, hence the objection made to receiving the vote, on the ground that the dedication of a highway could not thus be accepted, was properly taken. *Green* v. *Town of Canaan*, supra ; *Guthrie* v. *Town of New Haven*, supra ; *Remington* v. *Millerd*, supra. As a license to use or occupy real estate is revoked by sale of the land, so the sale of the premises in question revoked the offer to dedicate Proprietors street, provided it had not been previously accepted. And we think there was no such acceptance, even if an intent to dedicate was proved ; and the record finds that neither Myers nor the petitioner dedicated the street to the city.

3. Even if Proprietors street were dedicated to the public, yet the respondents have no right to the land described in the petition, because it forms no part of that street. It is within the line of the street described in the city vote, but the record finds that the lines of the city street do not conform to the lines of Proprietors street, as delineated on the arbitrators' plan. It must moreover rest on the acceptance by the public, and that acceptance, being made wholly by actual use by the public in travelling over it, must be confined to the street as fenced at the time of such use, and cannot be extended to the street as laid down on the map. There has confessedly been no actual travel over the strip enclosed by the petitioner's fence.

*Halsey* and *Pratt*, for the respondents.

1. There has been a dedication of this street as a public high-way, and an acceptance of it by the public.· The plan and award, as lodged in the ·town clerk's office, and the deeds made by the parties, and received by the petitioner, in fact all the evidence in the case, show such dedication.   *Guthrie* v. *Town of New Haven*, 31 Conn., 321; *Riley* v. *Hammel*, 38 id., 574; *Niagara Falls Suspension Bridge Co.* v. *Bachman*, 4 Lansing, 523; *The People* v̇. *City of Brooklyn*, 48 Barb., 211; *Baldwin* v. *City of Buffalo*, 35 N. York, 375; 2 Smith Lead. Cas. (H. & W. ed.), 209.      .

2. The acceptance by the public was within a reasonable time.   It was not expected that the street would be opened immediately, but it was opened as soon as the exigencies of public. travel demanded it.   This is all that the law means by requiring an acceptance within a reasonable time.   *Guthrie* v. *Town of New Haven*, 31 Conn., 321; *Noyes* v. *Ward*, 19 id., 267.

3. The acceptance took place before any attempt at revocation by the petitioner or those under whom he claims.   The street was open to public travel, and was travelled before the petitioner or those under whom he claims had attempted in any way to revoke the dedication.

4. It is not necessary in case of a dedication that travel shall actually pass over every foot of land opened for a street. It is sufficient if the public records, or metes and bounds, show the lines of the street.   In the case at bar the map and deeds show the limits of the highway, and the respondents claim that the lines of original dedication, existing at the time of acceptance, mark the boundaries of the highway, though the public do not in fact travel over every portion. The petitioner's deed, and the deeds of his grantors, all refer to the map as well as to the streets, as the lots are fixed by it, as far as the petitioner and the public are concerned.   Angell on Highways, § 149; *State* v. *Merritt*, 35 Conn., 314; *Simmons* v. *Cornell*, 1 R. Isl., 519; *Burthe* v. *Fortier*, 15 Louis.. Ann. R., 9.   The vote is proper evidence to show acceptance by the city.   *Guthrie* v. *Town of New Haven*, 31 Conn., 321. '

SEYMOUR, J.  The plaintiff avers in his bill that he is the owner of certain premises in the city of Norwich, and that along the northeasterly side of the same there is a private street; that he has been at great expense in enclosing the unincumbered portion of his premises from said private street, and that the defendants threaten to enter upon the enclosed portion and tear down the bank wall which he has erected; praying for an injunction.

The matter which has been contested before us is, whether that which the plaintiff alledges to be a private street is such, or is, as the defendants claim it to be, a public highway. This also seems to have been one of principal matters of contest in the Superior Court, and the case was reserved for the advice of this court mainly to settle that question.  The attention of neither court nor counsel was turned to the precise allegations of the plaintiff's bill.  If it had been it would have been seen that the question so earnestly discussed is outside of the issue as it arises on the record.

There was in the Superior Court a contest regarding the boundary line between the plaintiff's premises and the street in question.  The city claimed that the plaintiff had by his wall enclosed about two feet of the street, and had by a notice in writing ordered the plaintiff to remove back his wall about that distance.  The plaintiff denied that he had enclosed any portion of the street.  On the trial of this boundary question it became clear that the plaintiff's wall encroached indeed on the street, but only to the extent of about eleven inches, and this became so apparent that the defendants abandoned all claim to remove more than these eleven inches of the wall. But the plaintiff in his bill had sought protection for so much only of his premises as were *unincumbered by the street.* These eleven incumbered inches were therefore outside of the issue as that issue appeared by the papers.

In regard to these eleven inches, it is to be observed also that the only contest regarding them now is, whether they are part of a public highway or of a private street.  Even if the plaintiff's bill were adapted to raise that issue, and it should be found in his favor, that it is a private street only,

on which he had encroached, the court would be slow to exercise its extraordinary powers of injunction to protect the encroachment.

The parties however had an elaborate trial in the Superior Court regarding the character of the street, and they have been fully heard by us on that question. They both desire us to decide the case on that point. We therefore deem it our duty to decide whether the street is or is not a public highway.

The facts on which this question depends are substantially as follows:

The plaintiff's premises and the street in dispute are part of what was called the Roath estate, situated within the city of Norwich. The heirs of Roswell Roath had a difficulty in dividing that estate and they submitted the matter to arbitration.

The arbitrators, for the purpose of making a just distribution, caused the estate to be divided into eighty-six building lots, of which a plan was made, with streets and avenues marked on the plan. The seventh clause of the award is " that the lines of those lots which are bounded on the plan by any street, avenue or lane, shall extend to the center of the street, *and the proprietors and those in possession under them shall have free right of way* over and through said streets, avenues and lanes, in the same manner that they would have if such streets, avenues and lanes were *public highways.*" This award was made July 24th, 1851, and the parties without delay executed quitclaim deeds to each other in accordance with and in confirmation of the award, using the same phraseology as that used by the arbitrators in describing the avenues and streets and the rights of the parties therein. These deeds were duly recorded and the plan was deposited in the town clerk's office and there lodged on file. The street in question is called on the plan Proprietors street, but subsequently it went by the name also of Park street. It connects one of the old streets of the city, Cliff street, with a new street, having its origin in the arbitrators' plan, called " Roath avenue," and through that avenue with other streets of the plan.

The arbitrators had no power to dedicate any portion of the Roath estate to the public. Their authority was to make partition, and as incidental to that to confer rights of way upon the parties to the submission over the streets and avenues established by the award. This incidental power was exercised by making the right of way in those upon whom it was conferred as ample as in public highways, but limiting the right to the proprietors of lots and those in possession under them.

The terms of the award taken literally and strictly exclude from these streets visitors to the proprietors, whether on calls of business or friendship. Such visitors are not "proprietors," nor are they "in possession under them." The quitclaim deeds executed to confirm the award naturally followed in the words of the award itself. This narrow restriction of the right in respect to the persons who might exercise it was certainly not intended or expected to be perpetual. As from time to time these building lots should be occupied the access of the public to them would become, as it has now become, a necessity. The exclusion of the public would be neither desirable nor practicable. The arbitrators, owing to their restricted powers, could not dedicate the streets to the public, but they prepared the way for such a dedication, and made it in the nature of things well nigh inevitable. The names themselves, "streets and avenues," with widths appropriate to the names, show that public highways were contemplated as an ultimate result.

The burden upon the adjoining proprietor of a private way is substantially as heavy as that of a highway, but the conveniences and advantages of a public over a private street to the occupants of the eighty-six building lots are obvious. As private ways their paving, grading, repairing, and division into carriage and foot paths, would devolve upon the proprietors of the lots ; but in what mode, upon what general plan, with what apportionment of expense, must be left in doubt and confusion.

It was not expected that the property would be at once built upon, or that the streets would at once be needed and

used. Of course an immediate and full dedication to the public did not take place. Until 1865 Proprietors street was open to the public only by means of a pair of bars. In 1865 a public school house was erected on Roath avenue, and from that time the street has been open to public travel.

This opening is an act which, taken in connection with the award, the plan and the deeds, and with the situation of the property and its intended use for city building lots, indicates very clearly a dedication to the public as a highway. It was accepted as such by vote of the common council on the 2d of October, 1865, about two years before the plaintiff became owner of his lot. This vote of acceptance is of the street as it was supposed to be laid down on the arbitrators' plan, but by a mistake arising from an encroachment on the side of the street opposite the plaintiff, the vote locates the street somewhat west of its true situs. It is in consequence of this now admitted mistake that the written notice herein before mentioned required the plaintiff to set his wall back about two feet, instead of eleven inches.

The plaintiff however still insists that, admitting there is a highway in Proprietors street, its width is to be measured by the extent of the public travel, or at most by the fences of the adjoining proprietors who have erected fences along its sides, and thus that the eleven inches in dispute which have never been included within the limits of the highway as used or as fenced, are not included within the dedication.

We think the plaintiff under his deed is not in a condition to make this claim. It is also in violation of the spirit of the award and of the deeds made to carry it into effect. The parties contemplated that when the streets from time to time became public, they should be such up to the boundaries established by the award and marked upon the plan. Otherwise the center of a street might be public and its margins private, without any definite boundary between the one and the other. The symmetry of the entire plan would thus be destroyed. The opening of the street for public travel by the proprietors, and the use by the public, are to be construed

in connection with the plan of the streets and lots, and thus there was a constructive occupation by the public up to the limits indicated by the plan. This is especially so as against the plaintiff, who built the wall in dispute after having taken a deed in the terms now to be noticed. His first deed from one Myers, to whom the title had come from some of the original owners, bears date August 30th, 1867. The premises conveyed are described as commencing at a certain point in Cliff street, about which there was no contest, "thence easterly by said street fifty-eight and a half feet to a street called Park or Proprietors street; thence northerly by said Park or Proprietors street, &c." At this time the street in question was open to public travel and had been so about two years. The common council had nearly two years before accepted the street in substantial conformity with the arbitrators' plan. The word "street" prima facie and naturally imports a public highway It had been just used in the deed with that import, in speaking of Cliff street. The fifty-eight and a half feet on Cliff street measured according to the plaintiff's deed, brings us to the corner of Cliff and Proprietors street, as laid down on the arbitrators' plan, leaving the plaintiff's wall an encroachment on the street of eleven inches. The deed thus recognizes the street as a public highway up to the limit contended for by the defendants. The plaintiff introduced this deed as part of his evidence, and it is the only foundation of his title to that part of his premises described in it. He also introduced another deed in evidence of another parcel adjoining the former, in which latter deed, dated July 8th, 1868, the premises are described as lying on the southwesterly side of Park street, beginning at said street and at the northeasterly corner of land of the plaintiff (the tract conveyed by the first deed,) and running thence northwesterly by said street fifty-one feet to the corner of a fence, &c.

These deeds, taken in connection with the other documents, the vote of the common council, and the then existing public use, seem to conclude the plaintiff in respect to the matter in controversy.

If Proprietors street is a public highway, then the plain-

tiff's deeds by a familiar rule of construction carry him to the center of it; but if the street is a mere private way, it is by no means clear that the plaintiff by means of his deeds gets any interest in it.

The Superior Court is therefore advised to dismiss the plaintiff's bill; but inasmuch as the defendants by their written notice threatened the plaintiff's property to an extent now admitted to be considerably further than they were warranted in doing, we think justice will be done by taxing no costs against either party.

In this opinion the other judges concurred.