AETNA CASUALTY AND SURETY COMPANY
*v.* BONTIVERON LIGHTY ET AL.
(2574)

DUPONT, C.P.J., BORDEN and SPALLONE, Js.

Argued February 13—decision released May 7, 1985

*Harold C. Donegan,* for the appellants (defendants).

*Dennis M. Laccavole,* for the appellee (plaintiff).

SPALLONE, J. The defendants appeal from a judgment granting the plaintiff's application to vacate an arbitration award and denying the defendants' motion to confirm that award.

The facts which gave rise to this dispute are as follows. On June 3, 1979, James Lighty was involved in an automobile accident in which his wife, the defendant Bontiveron Lighty, and daughter, the defendant Melissa Lighty, were injured. At the time of the accident, James Lighty was insured by a $50,000 liability policy issued by the plaintiff. Under the policy, which had gone into effect on December 6, 1978, and which expired on June 6, 1979, the defendants were "covered persons." In July of 1980, payments to other claimants exhausted the liability coverage under that policy. Neither of the defendants received any payments before the coverage was exhausted.

The defendants thereupon submitted a claim to the plaintiff in which they sought coverage pursuant to the underinsured motorist provision of General Statutes § 38-175c, as amended by Public Acts 1979, No. 79-235. The amendment, which went into effect on October 1, 1979, *after* the date of the accident and *after* the expiration of the policy, added the following subsections: "(b) (1) An insurance company shall be obligated to make payment to its insured up to the limits of the policy's uninsured motorist coverage after the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident have been exhausted by payment of judgments or settlements . . . . (2) For the purposes of this section, an 'underinsured motor vehicle' means a motor vehicle with respect to which the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the applicable limits of liability under the uninsured motorist portion of the policy against which claim is made under subdivision (1) of subsection (b) of this section."[1]

---

[1] Public Acts 1979, No. 79-235 also added a reference to "underinsured motor vehicle" contained in General Statutes § 38-175c (a): "Every such

The plaintiff opposed the claim on the grounds that the policy contained no coverage for damages caused by "underinsured" motorists and that the coverage mandated by Public Acts 1979, No. 79-235 did not become effective until well after both the accident and the expiration of the policy. The dispute was eventually submitted to arbitration.

After a hearing, the arbitrators rendered an award which determined that the defendants had established a valid claim for underinsured motorist benefits and found the plaintiff liable for payments totalling $21,097. The plaintiff thereafter applied to the Superior Court to vacate the award pursuant to General Statutes § 52-418, and the defendants filed a cross application to confirm it. The trial court granted the application to vacate on the ground that the arbitrators had exceeded their authority in making the award. The sole question before us is whether the trial court's action was correct.

Arbitration is a creature of contract, and if the parties choose to limit the arbitrators' powers, then the parties will be bound by those limits. *Board of Education* v. *AFSCME*, 195 Conn. 266, 269, 487 A.2d 553 (1985). Pursuant to General Statutes § 38-175c,[2] however, insurers who issue uninsured motorist insurance policies are prohibited from contractually limiting those

policy shall provide insurance, herein called uninsured motorist coverage, in accordance with such regulations, with limits for bodily injury or death not less than those specified in subsection (a) of section 14-112, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles or of insured and underinsured motor vehicles . . . ."

[2] General Statutes § 38-175c (a) provides, in pertinent part: "Every such policy issued on or after October 1, 1971, which contains a provision for binding arbitration shall include a provision for final determination of insurance coverage in such arbitration proceeding."

issues concerning coverage which the arbitration panel may decide. *Oliva* v. *Aetna Casualty & Surety Co.,* 181 Conn. 37, 41, 434 A.2d 304 (1980).

With that statutory caveat, the charter of an arbitrator is " 'the submission and no matter outside the submission may be included in the award. *Palmer* v. *Green,* 6 Conn. 14, 18 [1825]; *Manlin* v. *Norwich,* 40 Conn. 13, 23 [1873]; *Schoolnick* v. *Finman,* 108 Conn. 478, 481, 144 A. 41 [1928]; Sturges, Commercial Arbitrations & Awards, pp. 144, 229; Russell, Arbitrations & Award (13th Ed.) pp. 201, 210, 211.' *Pratt, Read & Co.* v. *United Furniture Workers,* 136 Conn. 205, 208, 7 A.2d 120 [1949]." *Local 63, Textile Workers Union* v. *Cheney Bros.,* 141 Conn. 606, 613, 109 A.2d 240 (1954), cert. denied, 348 U.S. 959, 75 S. Ct. 449, 99 L. Ed. 748 (1955). It follows that an award must conform to the submission and "is void to the extent to which it is outside the submission." Id. This is particularly so in the case of insurance coverage where risks are actuarily analyzed and premium charges reflect those risks. To layer on additional coverage outside of the contemplation of the parties at the time they entered into the contract would expose the insurer to liability for payments beyond the scope of the agreement.

The submission in this case is the arbitration clause of Lighty's policy.[3] The language of the submission,

---

[3] The arbitration clause provides as follows: "If we and a covered person disagree whether that person is legally entitled to recover damages from the owner or operator of an uninsured motor vehicle or do not agree as to the amount of damages, either party may make a written demand for arbitration. In this event, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will pay the expenses it incurs, and bear the expenses of the third arbitrator equally.

Unless both parties agree otherwise, arbitration will take place in the county and state in which the covered person lives. Local rules of law as to procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding."

read together with General Statutes § 38-175c and the judicial gloss of that statute provided in *Oliva* v. *Aetna Casualty & Surety Co.,* supra, "delegates all disputed issues to binding arbitration, and can therefore only be construed as unrestricted." *Carroll* v. *Aetna Casualty & Surety Co.,* 189 Conn. 16, 20, 453 A.2d 1158 (1983).

Judicial review of an arbitration award is limited in scope by General Statutes § 52-418 and by the terms of the contractual agreement between the parties. *Trumbull* v. *Trumbull Police Local 1745,* 1 Conn. App. 207, 212, 470 A.2d 1219 (1984). Where the submission is unrestricted, any challenge to an award on the ground that the arbitrators exceeded their powers is restricted to a comparison of the award with the submission. *Carroll* v. *Aetna,* supra, 21. The submission in this case reads, in part, as follows: "If we and a covered person disagree whether that person is legally entitled to recover damages from the owner or operator of an *uninsured* motor vehicle or do not agree as to the amount of damages, either party may make a written demand for arbitration . . . ." (Emphasis added.)

The arbitration provision in Lighty's policy provided for the arbitration of disputes involving *uninsured,* rather than underinsured, vehicles. The language of that provision is clear and unambiguous, and therefore must be given its natural and ordinary meaning. *Horak* v. *Middlesex Mutual Assurance Co.,* 181 Conn. 614, 616, 436 A.2d 783 (1980). Contracts of insurance, moreover, must be read pursuant to the law existing when they were entered into; *Whitfield* v. *Empire Mutual Ins. Co.,* 167 Conn. 499, 506, 356 A.2d 139 (1975); because it is presumed that the parties bargained with each other on the basis of existing law. *Williamson* v. *Massachusetts Bonding & Ins. Co.,* 19 Conn. Sup. 59, 62, 109 A.2d 896 (1954). In reading Lighty's policy in light

of the law existing at the time the policy was entered into, we cannot so torture our interpretation of "uninsured motor vehicle" as to produce a result which would encompass "underinsured motor vehicle" as defined in Public Acts 1979, No. 79-235.

We find no support in either the language or legislative history of Public Acts 1979, No. 79-235 for the defendants' argument that the act should operate retroactively and that underinsured coverage should be read into the policy. "The purpose of [the act] was to remedy the 'anomalous situation' . . . where an injured party could find himself in a better position if the tortfeasor had no liability insurance than if he had only the statutory minimum amount." *Nationwide Ins. Co.* v. *Gode,* 187 Conn. 386, 390–91, 446 A.2d 1059 (1982).

In the senate proceedings with regard to the amendment, "Senator James J. Murphy, Jr., commented: 'Mr. President, what this bill does is require that *hereafter,* when one has purchased uninsured motorist coverage, that if that coverage exceeds any insurance coverage which a responsible party has in causing injuries, that once the liability insurance of the so-called responsible or negligent party has been exhausted, if there is additional coverage under one's uninsured motorists plan, then payment under that program would be triggered and allow for the greater recovery for the insured . . . .' 22 S. Proc., Pt. 5, 1979 Sess., p. 1354." (Emphasis added.) Id., 391. Although testimony was presented before the Joint Standing Committee on Insurance and Real Estate that insurers had already begun extending uninsured coverage to underinsured situations; id., 392–93 n.6; nothing in the history behind the act supports the assertion that it was intended to be retroactive.

General Statutes § 55-3 establishes a rule of presumed legislative intent in stating that "[n]o provision of the general statutes, not previously contained in the statutes of the state, which imposes any new obligation on any person or corporation, shall be construed to have a retrospective effect." General Statutes § 55-3 does not set forth a rule of law, however, and enactments which "contain language which unequivocally" indicates retroactivity will be so construed. *Schieffelin & Co.* v. *Department of Liquor Control,* 194 Conn. 165, 174–75, 479 A.2d 1191 (1984). Similarly, where it is clear that an amendment was intended to construe and clarify, rather than alter, a preexisting law, it will be treated as retroactive. *Shelton* v. *Commissioner,* 193 Conn. 506, 514, 479 A.2d 208 (1984). In the absence of unequivocal statutory language indicating retroactive application or dispositive legislative history illuminating such intent, we presume that statutory changes are intended to modify the existing law and are to be applied prospectively. *Vartuli* v. *Sotire,* 192 Conn. 353, 364 n.12, 472 A.2d 336 (1984).

"A statute will not be given a retroactive construction by which it will impose liabilities not existing prior to its passage. 'Laws which create new obligations . . . because of past transactions, have been universally reprobated by civil and common law writers, and it is to be presumed that no statute is intended to have such effect unless the contrary clearly appears.' *Pignaz* v. *Burnett,* 119 Cal. 157, 160, 51 Pac. 48 [1897]; *Estate of Parker,* 200 Cal. 132, 142, 251 Pac. 907 [1926]; 59 C.J. 1172. The rule that laws are not to be construed as applying to cases which arise before their passage is applicable when to disregard it would impose an unexpected liability that if known might have caused those concerned to avoid it. *People ex rel. Griffith, Inc.* v. *Loughman,* 249 N.Y. 369, 379, 164 N.E. 253 [1928];

*Lewellyn* v. *Frick,* 268 U.S. 238, 252, 45 Sup. Ct. 487 [1924]." *Massa* v. *Nastri,* 125 Conn. 144, 148, 3 A.2d 839 (1939).

It is plainly evident that the defendants' construction of Public Acts 1979, No. 79-235 would require the plaintiff to make payments for a liability that did not exist prior to its passage and would write into a pre-existing contract, already executed and since expired, an ex post facto obligation in violation of the principles enunciated in *Massa* v. *Nastri,* supra. The award in this case was unassailably beyond the scope of the submission to which the parties had agreed.

There is no error.

In this opinion the other judges concurred.