THOMAS E. GOLDEN REALTY COMPANY *v.*
SOCIETY FOR SAVINGS
(11405)

LANDAU, HEIMAN and FREEDMAN, Js.

Argued February 10—decision released June 8, 1993

*Daniel Shepro,* with whom, on the brief, was *Ann Marie Kent,* for the appellant (plaintiff).

*Karen P. Blado,* with whom, on the brief, were *Janet Hubon Stratton* and *Frank J. Mastrandrea,* for the appellee (defendant).

LANDAU, J. The plaintiff appeals from the trial court's dismissal of a summary process action following the court's granting of the defendant's motion to strike the complaint. On appeal, the plaintiff claims that the trial court improperly (1) concluded that the notice to quit lacked the requisite specificity to comply with General Statutes § 47a-23, (2) concluded that the plaintiff failed to give adequate notice of default under the lease, (3) concluded that the notice to quit and the complaint were different and thereby failed to comply with the requirements of General Statutes § 47a-23, and (4) dismissed the action, sua sponte, for lack of subject matter jurisdiction.[1] The trial court's dismissal of the action was

---

[1] The plaintiff also claims that it is against public policy to dismiss a summary process action because of a variance between the notice to quit and

based on its conclusion that the defective notice to quit deprived it of subject matter jurisdiction to hear the action. We agree with the plaintiff's first two claims and reverse the judgment of the trial court. Therefore, we do not address the plaintiff's remaining claims.

The facts fairly provable under the relevant counts of the complaint are as follows. In 1964, the plaintiff, Thomas E. Golden Realty Company (Golden), entered into a ground lease with The Noro Company (Noro). The lease provided for a term of fifty years with two renewal options of twenty years each. In 1976, the lessee's interest in the lease was assigned from a previous assignee to Echo Six (Echo), which built a 30,000 square foot office building on the land. In 1977, the defendant, Society for Savings (Society), became the mortgagee of the leasehold interest. On April 5, 1991, Society became the owner of the leasehold interest as a result of a judgment of strict foreclosure entered against Echo.

Beginning in November, 1990, and continuing through August 14, 1991, Echo and Society were each notified of defaults pursuant to the terms of the lease between Echo and Golden. The defaults included, inter alia, the failure to remove fuel tanks buried on the property, the lapse of insurance coverage, the failure to provide evidence of insurance coverage naming Golden as the insured, the failure to pay real estate taxes, the failure to keep the property in good and reasonable condition, as well as the failure to pay attorney's fees pursuant to the lease. On November 27, 1990, the plaintiff notified Society that Echo had defaulted in several ways under the terms of the lease, including the fail-

the revised complaint when the complaint was revised solely at the request of the defendant. Finally, the plaintiff claims that, because the trial court denied the defendant's earlier motion to dismiss the complaint, in the absence of countervailing evidence, the trial court should have been bound by that decision when addressing the motion to strike.

ure to pay rent, the failure to maintain the property in good condition, the failure to remove fuel tanks, and the failure to comply with local zoning ordinances. Society, in return for an extension of time to cure the default regarding the fuel tanks, agreed to discharge all tax liens, repair leaks in the building, pay reasonable counsel fees, and bring eviction proceedings against the current tenant. Society agreed to perform these acts upon taking title on April 5, 1991. Society did not perform pursuant to this agreement.

On September 17, 1991, Golden served Society with a notice to quit pursuant to General Statutes § 47a-23 (b). Society was directed to quit the premises "for the reason that you are in violation of the lease and nonpayment of additional rent." The summary process action was initiated on October 10, 1991, and Society filed a motion to dismiss on October 21, 1991, claiming that the notice to quit was defective, premature, and improperly served. Society argued that Golden's grounds for the termination, the violation of the lease and the nonpayment of additional rent, failed to demonstrate conduct that constituted a violation. In denying the motion to dismiss, the trial court held that the nonpayment of additional rent was a sufficiently clear statutory reason and, therefore, the notice to quit complied with § 47a-23. The trial court stated that the "[f]act that the notice to quit did not include the specific categories of additional rent or the words 'when due' do[es] not render the notice defective."

In compliance with Society's requests, Golden filed two revised complaints. The first revised complaint indicated with greater specificity the precise violations of the lease and the additional rents due; the second contained copies of correspondence and other documents that were cited in the first revised complaint. Society then filed a motion to strike. The trial court granted this motion on the basis, inter alia, that the

second revised complaint, with the numerous documents attached, "enlarged the complaint so that the notice to quit lacks the requisite specificity."

I

The plaintiff's first claim is that the trial court improperly concluded that the notice to quit lacked the requisite specificity to comply with General Statutes § 47a-23. We agree.

Section 47a-23 dictates the form of a notice to quit, as well as the reasons for a notice to quit. The statute provides that the reasons supporting a notice to quit include (1) the lapse of time pursuant to the lease, (2) the failure to comply with any expressed stipulation in the lease, (3) a violation of the rental agreement or lease, (4) the nonpayment of rent for residential property within the grace period provided pursuant to General Statutes §§ 47a-15a or 21-83, (5) the nonpayment of rent when due for commercial property, (6) a violation of General Statutes §§ 47a-11 or 21-82 (b), (7) when the premises are occupied by one who never had a right or privilege to occupy such premises, or (8) when one who had a right or privilege to occupy such premises but that right or privilege has terminated. The form for a notice to quit requires that the party state the "reason or reasons for the notice to quit possession or occupancy using the statutory language or words of similar import." General Statutes § 47a-23 (b).[2]

---

[2] We note that the notice to quit statute was revised two weeks after the plaintiff's notice to quit was served. The defendant argues that the revised statute should not apply here. We disagree. The revision added the phrase "or words of similar import." The legislative history of this revision indicates that it was a technical amendment designed to clarify the statute and make it consistent with existing housing court interpretations of the act. "[W]here it is clear that an amendment was intended to construe and clarify, rather than alter, a preexisting law, it will be treated as retroactive." *Aetna Casualty & Surety Co.* v. *Lighty,* 3 Conn. App. 697, 703, 491 A.2d 1118 (1985).

This court encountered a similar claim in *Southland Corporation* v. *Vernon,* 1 Conn. App. 439, 452, 473 A.2d 318 (1984). There, the defendant claimed that the plaintiff's notice to quit, which stated: "[Y]our right or privilege to occupy such premises has terminated," was fatally defective. While recognizing "the principle that, because of the summary nature of its remedy, the summary process statute has been narrowly construed and strictly followed"; id.; this court held that the language in the plaintiff's notice to quit "substantially tracks that of General Statutes § 47a-23 (a)"; id.; and upheld the validity of the notice to quit. Id. Here, the plaintiff's notice to quit provided that the reasons were "that you are in violation of the lease and nonpayment for additional rent." The phrase "nonpayment for additional rent" substantially tracks the language in the statute and conveys a sufficient ground for the notice to quit. The trial court improperly held that the notice to quit lacked the requisite specificity to comply with the statute.

## II

The plaintiff's second claim is that the trial court improperly concluded that the plaintiff failed to give adequate notice of a default under the lease. We agree.

The record indicates that between November 26, 1990 and August 14, 1991, the plaintiff sent at least fifteen letters to the defendant regarding specific violations of the lease. The trial court, in its memorandum of decision, held that because the defendant was not the owner of the property before April 5, 1991, any correspondence before that date is irrelevant because the defendant was under no duty to assume any obligations before that time. The trial court then reviewed the correspondence sent after April 5, 1991, and concluded that the correspondence merely invited response from the defendant and suggested negotiations or

spoke of other obligations. Therefore, it concluded that the correspondence was insufficient to convey notice of the violations.

In *Southland,* the defendant made similar claims. There, the plaintiff informed the defendant that it was terminating its franchise agreement. The defendant then filed an application for an injunction preventing such termination, which the trial court denied. The plaintiff, in a separate action, served the defendant with a notice to quit. The defendant claimed that it did not have notice of the reasons for the notice to quit. We held that it was "inconceivable that the defendant did not know that the basis for the claim of termination of his right to occupy the premises was the claimed termination of the franchise. Even under the strict construction rule of *Jo-Mark Sand & Gravel Co.* v. *Pantenella,* [139 Conn. 598, 600–601, 96 A.2d 217 (1953)], it would be the height of hypertechnicality to hold this notice to quit defective." *Southland Corporation* v. *Vernon,* supra, 452–53.

The same reasoning applies in this case. The defendant was notified of the reasons for the default on November 27, 1990. For several months thereafter, the parties were involved in negotiations regarding the cure of the defaults. In fact, the plaintiff extended the time to cure these defaults at the request of the defendant. It is disingenuous for the defendant to argue now that it did not have notice of the reasons for the notice to quit. Here, too, "it would be the height of hypertechnicality to hold this notice to quit defective." Id.

The judgment dismissing the action for lack of subject matter jurisdiction is reversed and the case is remanded with direction to deny the defendant's motion to strike and for further proceedings.

In this opinion the other judges concurred.