[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This action went to verdict on October 9, 1997, the jury having awarded the plaintiff the sum of $155,000.00 in damages against the defendant.
Thereafter, the defendant moved to set aside the verdict; moved for a remittitur and to reduce the verdict due to collateral source payments. The jury reasonably could have found from the evidence that the defendant's professional negligence caused the plaintiff's injuries and damages, including permanent injury.
The evidence revealed that on October 24, 1990, the plaintiff consulted the defendant for surgical relief of a longstanding problem with bunions on her feet. X-rays were taken during the initial consultation, the plaintiff was scheduled for surgery in January, 1991 and was informed of certain risks involved. While acknowledging that she signed the form setting forth possible risks and complications for the proposed surgery (Exhibit A3), the plaintiff denied being advised of all the risks checked off on the undated form which the defendant also signed.
Although X-rays were taken of both feet, the plaintiff testified that the defendant only discussed surgery for the left foot and could only recall being warned that the bunion could recur after surgery. The defendant testified that he discussed surgery of both feet with the plaintiff as well as advising her of all the risks which were listed and checked off in plaintiff's Exhibit A3.
The plaintiff canceled the surgery scheduled for January, 1991 because of root canal surgery. Thereafter, she obtained her records from the defendant and, on May 28, 1991, consulted with Steven B. Silverstein, D.P.M. concerning her bunions. She returned to the defendant who rescheduled surgery for August 6, 1991 at which time he performed a modified McBride Bunionectomy with an adductor tendon transfer on the left foot and a cheilectomy with partial metatarsal head resection on the second metatarsal of the left foot. The plaintiff also was diagnosed as having degenerative joint disease of the second metatarsal secondary to Freiberg's infarction. CT Page 1457
The plaintiff underwent surgery for correction of her bunions because she wished to wear high heel shoes comfortably throughout the day and also, because she is short in stature, wearing three or four inch heel shoes made her appear taller. After surgery, she had physical therapy at the defendant's office, including whirlpool treatment, and started exercising her large toe to regain range of motion. Eight weeks later, she was able to bear weight on her left foot but complained of pain. She returned to work and continued working until May, 1992 when her employer moved from Connecticut. At that time, she still complained of soreness in her foot and a sensation under the large toe that made her feel as if she were walking on marbles or stones.
The plaintiff claimed that following surgery, she no longer could flex her toe to the degree as before. Moreover, she claimed that the large toe swerved to the left even though it "looked the same." The defendant treated the plaintiff in July and October, 1992 and prescribed orthotics but the plaintiff stated that it was too uncomfortable wearing that type of shoe. The defendant then suggested either further corrective surgery or steroid injections. The plaintiff did not accept these recommendations but did have electric shock treatment in an unsuccessful effort to pull back the large toe.
In April, 1993, the plaintiff requested Albert Schwartz, D.P.M., to examine her foot and he recommended corrective surgery. She now realized that the second toe of her left foot was also pulling to the left and she was forced to wear sneakers in order to cushion the sensation of shock when she walked. She could no longer "walk barefooted" in comfort. The plaintiff did not return to Dr. Schwartz after the initial visit but went to an orthopedic surgeon, Dr. Philip Luchini for an opinion. She complained of the pain in walking and the sensation under her big toe. Dr. Luchini examined her but did not recommend any particular course of treatment. She has not sought further treatment or care for her left foot and now wears sneakers exclusively.
Each party presented the testimony to an expert and the experts, using the plaintiff's X-rays and medical records, were diametrically opposed in their conclusions and opinions.
"The right to a jury trial is fundamental in our judicial system, and. . . the right is one obviously immovable limitation on the CT Page 1458 legal direction of the court to set aside a verdict, since the constitutional right of a trial by jury includes the right to have issues of fact as to which there is room for a reasonable difference of opinion among fair-minded [persons] passed upon by the jury and not by the court." (Internal quotation marks omitted.) Lemonious v. Burns, 23 Conn. App. 735, 739, cert. denied, 218 Conn. 903 (1991). "A verdict is set aside, and a contrary verdict directed when the jurors could not reasonably and legally have reached the conclusion they had reached. "Outlawv. City of Meriden, 43 Conn. App. 387, 391, cert. den.,239 Conn. 946 (1996).
Pursuant to the provisions of § 320 of the Practice Book, the trial court's review is necessarily limited solely to a determination of whether there is evidence reasonably to support the verdict reached by the jury. Outlaw v. City of Meriden,supra, at 391; Lemonious v. Burns. supra, at 739. The court must consider the evidence, and all reasonable inferences which may be drawn, in the light most favorable to the prevailing party, Berryv. Loiseau, 223 Conn. 786, 819 (1992); Maroun v. Tarro,35 Conn. App. 391, 395 (1994).
"The assessment of damages in personal injury cases is peculiarly within the province of the trier [of facts] and will only be disturbed when plainly excessive. . ." Collins v.Wetherbee, 31 Conn. App. 581, 521 (1993). "The only practical test to apply a verdict is whether the award of damages falls somewhere within the necessarily uncertain limits of fair and reasonable compensation in the particular case. or whether the verdict so shocks the sense of justice as to compel the conclusion that the jury were influenced by partiality, mistake or corruption." Childs v. Bainer, 235 Conn. 107, 113-114 (1995).
In applying the test and considering the evidence as required, it cannot fairly be said that the verdict of $155,000.00 was excessive. Accordingly, the motions to set aside the verdict and for remittitur are denied.
The plaintiff concedes that the $5,000.00 award for economic damages "should be reduced to $0 by virtue of collateral source payments." (Memorandum In Opposition To Defendant's Motion To Set Aside Verdict, p. 12). Therefore judgment shall enter for the plaintiff in the sum of $150,000.00, plus costs and interest.
BY THE COURT
CT Page 1459
LEANDER C. GRAY, JUDGE