[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION TO STRIKE AND MOTION RE: C.G.S. SEC. 33-900(d)
The plaintiff, Edward DeVivo, owns 50 percent of the stock of CT Page 213 Dattco, Inc. (Dattco) and serves as one of the two directors of the corporation. The other director, Louis DeVivo, owns the other half of Dattco's stock and serves as its president. On June 19, 1998, the plaintiff filed a complaint against Louis DeVivo and Dattco seeking judicial dissolution of Dattco pursuant to General Statutes § 33-896. Within the complaint, the plaintiff cited two grounds for judicial dissolution: (a) illegal and fraudulent conduct by Louis DeVivo and (b) a deadlock of the directors in the management of the corporate affairs that cannot be breached by the shareholders.[1] The defendants filed a notice of election to purchase in lieu of dissolution, pursuant to General statutes § 33-900(a), on June 24, 1998. On that same date, the legislature passed Public Acts, Spec. Sess., June, 1998, No. 98-1, § 118 (Spec. Sess. P.A. 98-1) which repealed and revised General Statutes § 33-900. The plaintiff filed an amended complaint on July 27, 1998 seeking dissolution based solely on deadlock of directors in the management of the corporation. In a separate count, the plaintiff alleges that Louis DeVivo made unauthorized payments of corporate assets to his son and seeks reimbursement to Dattco of these payments. The defendants filed a supplemental notice of election to purchase in lieu of dissolution on July 28, 1998.
Unable to reach an agreement concerning the fair value of the plaintiff's shares, the defendants, pursuant to General Statutes § 33-900(d), filed a motion to stay the proceedings in order to determine the shares' fair value on August 24, 1998. On August 26, 1998, the plaintiff filed a motion to strike the defendants' notice of election and supplemental notice of election, or in the alternative, an order declaring such notices null and void. The parties have complied with Practice Book § 10-42 and filed memoranda of law supporting or opposing their respective positions.
 DISCUSSION
General Statutes (Rev. to 1997) § 33-900(a) stated: "Ina proceeding under subdivision (1) of subsection (a) ofsection 33-896 to dissolve a corporation that has no shares listed on a national securities exchange or regularly traded in a market maintained by one or more members of a national or affiliated securities association, the corporation may elect or, if it fails to elect, one or more shareholders may elect to purchase all shares owned by the petitioning shareholder at the fair value of the shares. An election pursuant to this section CT Page 214 shall be irrevocable unless the court determines that it is equitable to set aside or modify the election." (Emphasis added.) General Statutes § 33-896(a)(1) allows the Superior Court to dissolve a corporation: "In a proceeding by a shareholder if it is established that: (A) The directors or those in control of the corporation have acted, are acting or will act in a manner that is illegal, oppressive or fraudulent; or (B) the corporate assets are being misapplied or wasted."
Spec. Sess. P.A. 98-1 revised General Statutes § 33-900
to explicitly permit a purchase in lieu of dissolution by the corporation or shareholders of the corporation of the petitioning shareholder's stock in a proceeding by a shareholder under subdivision (1) of subsection (a) orsubdivision (2) of subsection (b) of § 33-896 to dissolve a corporation. General Statutes § 33-896(b)(2) provides grounds for judicial dissolution of a corporation when the directors or shareholders are deadlocked.[2]
The plaintiff argues that he seeks dissolution pursuant to General Statutes § 33-896(b)(2) since the directors are deadlocked in the management of corporate affairs. In filing his complaint on June 19, 1998, five days before the adoption of Spec. Sess. P.A. 98-1, the plaintiff contends that the court must apply General Statutes (Rev. to 1997) § 33-900 to deny the defendant's election to purchase his shares in lieu of dissolution. The plaintiff claims that the right of the corporation or remaining shareholders to purchase shares from the party seeking dissolution under General Statutes (Rev. to 1997) § 33-900 applies only to an action for dissolution under General Statutes 33-386(a)(1). The plaintiff claims that his amended complaint filed on July 27, 1998 merely clarified that he sought dissolution under General Statutes § 33-386(b)(2) only, and that he did not seek dissolution under General Statutes § 33-386(a)(1).
The defendants contend that the court must apply General Statutes § 33-900, as amended June 24, 1998, since the plaintiff filed an amended complaint one month after the effective date of Spec. Sess. P.A. 98-1. The defendant claims that if the court permitted the plaintiff to amend his complaint, thereby changing the grounds for dissolution, the court would impermissibly divest the defendants of a property interest (an option to purchase the plaintiff's shares of Dattco in lieu of dissolution) in violation of their due process rights. CT Page 215 In the alternative, the defendants argue that it does not matter whether the court applies General Statutes (Rev. to 1997) §33-900 or the present version of General Statutes § 33-900
because the changes made in 1998 are technical changes by the revisor that only clarified the existing statute.
Therefore, the court must determine whether the defendants may purchase the plaintiff's shares in lieu of dissolution, though he seeks dissolution under General Statutes §33-896(b)(2).
 A.
The plaintiff contends that he may amend his complaint as a matter of right since he filed his amended complaint within thirty days after the return date. According to General Statutes § 52-128, "[t]he plaintiff may amend any defect, mistake or informality in the . . . complaint . . . and insert new counts in the complaint, which might have been originally inserted therein, without costs, during the first thirty days after the return date . . ." See McLaughlin Ford, Inc. v. Ford Motor Co.,192 Conn. 558, 562-63 n. 5, 473 A.2d 1185; Practice Book § 10-59, formerly § 175. "The fact that an amendment changes a legal theory on which the action initially was brought is of no consequence if the factual situation upon which the action depends remains the same and has been brought to the defendant's attention by the original pleading." (Internal quotation marks omitted.) Valentino v. Miller, Superior Court, judicial district of Danbury, Docket No. 315928 (May 6, 1996) (Stodolink, J.). A revised complaint supersedes the original complaint, which becomes merely a part of the history of the case. See Marrinan v.Hamer, 5 Conn. App. 101, 103, 497 A.2d 67 (1985).
In light of these considerations, the plaintiff argues that the date of his filing of the amended complaint is irrelevant to determining which version of General Statutes § 33-900 to apply since he filed the amended complaint within thirty days of the return date. In determining which version of General Statutes § 33-900 to apply, the plaintiff analogizes his amended complaint to an amended complaint filed after the statute of limitations has run. In such situations, the date of the amended complaint relates back to when the original complaint gave a party fair notice of the suit for the purposes of the statute of limitations. See Barrett v. Danbury Hospital, CT Page 216232 Conn. 242, 263, 654 A.2d 748 (1995). Under the relation back doctrine, "[i]t is proper to amplify or expand what has already been alleged in support of a cause of action, provided that the identity of the cause of action remains substantially the same, but where an entirely new and different factual situation is presented, a new and different cause of action is stated." (Internal quotation marks omitted.) Id.
Based upon the similarity between these two circumstances, the court believes that the plaintiff was entitled to amend his complaint subsequent to the revision of a statute. In this case, the plaintiff provides the same set of facts under both the amended complaint and the original complaint. The only changes involve the addition of a second count to the same facts and a restriction of the grounds for dissolution to § 33-896(b)(2). These changes are permitted under General Statutes § 52-128, and therefore the plaintiff properly amended his complaint.
The defendants claim that the original complaint produced a property interest in the defendants, an option to purchase the plaintiff's shares. The defendants argue that if the court permits the plaintiff to amend his complaint then the court would permit an unconstitutional divestment of a property right without due process of the law. The defendants' argument ignores General Statutes § 52-128. General Statutes §52-128 permits plaintiffs to revise their complaints within thirty days of the return date. The defendants' election to purchase shares does not vest before the plaintiff has an opportunity to amend his complaint under General Statutes §52-128.
 B.
The defendant next argues that Spec. Sess. P.A. 98-1 merely clarified General Statutes (Rev. to 1997) § 33-900. The plaintiff contends that the defendants may not purchase the plaintiff's shares since the statutory language prior to Spec. Sess. P.A. 98-1 was clear and unambiguous.
A court's "fundamental objective is to ascertain and give effect to the apparent intent of the legislature . . . Moreover, principles of statutory construction require the court to construe a statute in a manner that will not frustrate its intended purpose or lead to an absurd result . . . The court CT Page 217 must avoid a construction that fails to attain a rational and sensible result that bears directly on the purpose the legislature sought to achieve." (Citations omitted; internal quotation marks omitted.) General Accident Ins. Co. v. Powers,Bolles, Houlihan Hartline, Inc., 50 Conn. App. 701, 708, (1998).
"Ordinarily, if the language of a statute is plain and unambiguous, [courts] need look no further than the words because [courts] assume that the language expresses the legislature's intent . . . In seeking to discern that intent, courts look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." Office of Consumer Counsel v. Department of PublicUtility Control, 246 Conn. 18, 29, (1998).
"Technical revisions of the General Statutes are presumed to be just that, having no effect on the state of the substantive law." State v. Perry, 195 Conn. 505, 513,488 A.2d 1256 (1985). "Unless it clearly appears otherwise, revisers are presumed to have expressed in their revision the intent of existing statutes, though they may have altered the form of their statement." Wilson v. Miller, 144 Conn. 212, 216, 128 A.2d 894
(1957). "`[W]here it is clear that an amendment was intended to construe and clarify, rather than alter, a preexisting law, it will be treated as retroactive.'" Thomas E. Golden Realty Co. v.Society for Savings, 31 Conn. App. 575, 579, 626 A.2d 788 (1993), quoting Aetna Casualty Surety Co. v. Lighty, 3 Conn. App. 697,703, 491 A.2d 1118 (1985).
In the court's opinion Spec. Sess. P.A. 98-1 created an ambiguity concerning the proper interpretation of General Statutes (Rev. to 1997) § 33-900. In order to determine whether a substantive change occurred, the court will examine the history of both General Statutes § 33-896 and General Statutes § 33-900.
In 1994, the state legislature passed the Connecticut Business Corporation Act, effective January 1, 1997. This act includes sections 33-600 to 33-998 of the General Statutes. See General Statutes § 33-600. From 1994 to 1996, General Statutes § 33-896(a)(1) stated: "In a proceeding by a CT Page 218 shareholder if it is established that: (A) The directors are deadlocked in the management of corporate affairs, the shareholders are unable to break the deadlock and irreparable injury to the corporation is threatened or being suffered, or the business or affairs of the corporation can no longer be conducted to the advantage of the shareholders generally, because of the deadlock; (B) the directors or those in control of the corporation have acted, are acting or will act in a manner that is illegal, oppressive or fraudulent; (C) the shareholders are deadlocked in voting power and have failed, for a period that includes at least two consecutive annual meeting dates, to elect successors to directors whose terms have expired; (D) the corporate assets are being misapplied or wasted." This language matched the American Bar Association Model Act § 14.30(2). According to General Statutes (Rev. to 1995) § 33-900(a), a corporation or shareholder could purchase a petitioning shareholder's shares in lieu of dissolution "[i]n a proceeding under subdivision (2) of section 33-896 to dissolve a corporation." The court finds that General Statutes (Rev. to 1995) § 33-900 did not clearly state what this section meant since "subdivision (2)" could refer to either General Statutes § 33-896(a)(2) or General Statutes § 33-896(b)(2).[3]
In Public Acts 1996, No. 96-271, § 124, the legislature merely attempted to clarify the existing statute. By changing the reference in General Statutes (Rev. to 1995) § 33-900 from "subdivision (2)" to "subdivision (1) of subsection (a)," the legislature provided a proper proceeding for a corporation or shareholder to elect to purchase a petitioning shareholders' stock.[4] This change to General Statutes § 33-900, however, failed to reference a section concerning shareholder or director deadlock. While the plaintiff argues that this created a substantive change, the legislative history of P.A. 96-271 suggests that the 1996 changes to General Statutes §§ 33-896 and 33-900 were merely technical and that the legislature did not intend to make a substantive change when it revised General Statutes §§ 33-896 and 33-900.[5]
Special Session P.A. 98-1 provided the most recent technical revisions to General Statutes § 33-900.[6] See 41 H.R. Proc., Pt. 17, 1998 Sess., pp. 5685-86; 41 S. Proc, Pt. 10, 1998 Sess., p. 3116. Having deleted General Statutes (Rev. to 1995) §§ 33-896(a)(1)(A) and 33-896(a)(1)(C) when it made its 1996 revisions, General Statutes (Rev. to 1997) §33-900 did not state that a corporation or shareholder could CT Page 219 purchase a petitioning shareholder's stock in lieu of dissolution when the directors or shareholders reach a deadlock. By adopting the technical changes in Spec. Sess. P.A. 98-1, the legislature made it apparent that the omission of a reference to shareholder or director deadlock in General Statutes § 33-900
was inadvertent.
An examination of the legislative history of Spec. Sess.P.A. 98-1 § 118 also supports the proposition that this omission was inadvertent. In the House of Representatives, Representative Lawlor stated: "Sections 118 and 119 clarify a section of the statutes that governs what happens if shareholders reach a deadlock in a decision of how to govern the corporation. Prior to 1994, this was the law in 1994, the legislature rewrote those particular provisions of the General Statutes effective in 1996. Inadvertently the legislature did not continue what had been the existing law that in the event of a shareholder deadlock over governance of a corporation the court instead of being required to dissolve the corporation, instead allows one group of shareholders to buy out the other group of shareholders to resolve the deadlock." 41 H.R. Proc., supra, pp. 5685-86. In addition, Senator Jepsen, in moving for adoption of the bill in the senate, stated that "the bill is truly technical in nature." 41 S. Proc., supra, p. 3116.
Aside from the comments of the legislature, it would be illogical to conclude that the legislature intended to exclude a proceeding under General Statutes § 33-896(b)(2) from the provisions in General Statutes § 33-900. If the court adopted the plaintiff's arguments, the statutes would permit a corporation or shareholder allegedly engaged in wrongdoing to purchase a petitioning party's shares but force a corporation that is deadlocked by the directors or shareholders, and solvent, to dissolve when other shareholders wish to continue that the legislature did not intend that anomalous result. In the court's view the defendants may purchase the plaintiff's shares in lieu of dissolution since Spec. Sess. P.A. 98-1 had a retroactive effect on the statute.
 CONCLUSION
For these reasons, the court denies the plaintiff's motion to strike the defendants' notice of election and the defendants' supplemental notice of election. The court also grants the defendants' motion pursuant to General Statutes § 33-900(d) CT Page 220 to stay judicial proceedings and to determine the fair value of the plaintiff's shares.
Hale, J.R.