THE SOUTHLAND CORPORATION *v.* SHERIDAN VERNON
(2114)

HULL, DUPONT and BORDEN, Js.

440

Argued December 6, 1983—decision released March 20, 1984

*Peter W. Benner,* for the appellant (plaintiff).

*Kathleen Eldergill,* with whom, on the brief, was *Bruce S. Beck,* for the appellee (defendant).

BORDEN, J. This is a summary process action in which the plaintiff appealed[1] from the judgment of the trial court dismissing the action because it presented factual questions which the court deemed to be too complex for summary process. The plaintiff is the franchisor and lessor of a 7-Eleven store; the defendant is the franchisee and lessee. The franchise agreement, which the plaintiff describes as its standard franchise agreement, includes lease provisions which provide that the lease terminates upon termination of the franchise.

---

[1] This appeal, originally filed in the Appellate Session of the Superior Court, was transferred to this court. Public Acts, Spec. Sess., June, 1983, No. 83-29, § 3 (c).

On July 16, 1982, the plaintiff delivered to the defendant, pursuant to General Statutes § 42-133f, notice of termination of the franchise effective sixty days thereafter, claiming several material breaches of the franchise agreement. On September 3, 1982, the defendant instituted an action in the Superior Court in the judicial district of Hartford-New Britain at Hartford against the plaintiff under General Statutes § 42-133g[2] for an injunction against the termination of the franchise, and for money damages for violation of the Franchise Agreement Act; General Statutes §§ 42-133e through 42-133h; for violation of the Connecticut Unfair Trade Practices Act (CUTPA); General Statutes §§ 42-110a through 42-110q; and for violation of the Connecticut Anti-Trust Act; General Statutes §§ 35-24 through 35-45. After an evidentiary hearing, the court, *M. Hennessey, J.,* on November 4, 1982, denied the motion for a temporary injunction.[3] The defendant continued to occupy the premises and operate the store.

On November 18, 1982, the plaintiff served the defendant with a notice to quit and, upon the defendant's failure to surrender the premises, brought this summary process action on November 30, 1982, to the housing division of the Superior Court in the judicial district of Hartford-New Britain at Hartford. See General Statutes § 47a-70 (a); Practice Book § 5A. On December 9, 1982, the defendant moved to dismiss the

---

[2] General Statutes § 42-133g provides as follows: "Any franchisee may bring an action for violation of sections 42-133e to 42-133g, inclusive, in the superior court to recover damages sustained by reason of such violation, which action shall be privileged in respect to its assignment for trial and, where appropriate, may apply for injunctive relief as provided in chapter 916. Such franchisee, if successful, shall be entitled to costs, including, but not limited to, reasonable attorneys' fees."

[3] The defendant appealed from the denial of the motion for a temporary injunction to the Supreme Court, which appeal was subsequently dismissed presumably because the order denying a temporary injunction was not an appealable final judgment. That action, in which the defendant has claimed a jury trial on some of the issues, is still pending in the trial court.

summary process action, raising, inter alia, the claim of undue complexity.[4] On March 23, 1983, the plaintiff, in an attempt to meet the defendant's claim of complexity, moved to narrow and simplify the issues for trial by seeking an order from the court that, as a matter of law, it need not prove "good cause" for the termination of the franchise; see General Statutes § 42-133f (a); as a basis for its claim of termination of the lease.

Meanwhile, the plaintiff made two other efforts to gain possession of the premises. On December 8, 1982, it filed a counterclaim in the defendant's pending action; see footnote 3, supra; claiming termination of the franchise and seeking, inter alia, possession of the premises; and it instituted another action against the defendant, seeking to enjoin him from operating the store and to require him to deliver possession of it.

On April 12, 1983, all three cases[5] came before the court, *N. O'Neill, J.* The court noted that in the defendant's action for an injunction and for money damages, the pleadings were closed but discovery was not completed; in the plaintiff's action for an injunction and possession the pleadings were not closed. Turning to the summary process action, before us on appeal, the court ruled orally from the bench that the plaintiff must prove good cause for termination of the franchise in order to prove termination of the lease. It also granted the defendant's motion to dismiss on the ground that the questions involved were too complex for summary process. The basis for this determination was an amal-

---

[4] Subsequently the action was transferred under General Statutes § 47a-70 (a) from the housing division of the court to the regular civil docket of the judicial district; from there it was transferred back to the housing division, and from there it was retransferred to the judicial district's regular civil docket, where it finally came to rest.

[5] These three cases are the summary process action, the defendant's action against the plaintiff for an injunction and for money damages, and the plaintiff's action against the defendant for an injunction and for possession.

gam of several factors: the requirement that the plaintiff prove good cause for termination of the franchise; the need for discovery; and the right of the defendant to present his defenses to the termination of the franchise, which presumably would include the claims relating to CUTPA and the Connecticut Anti-Trust Act. This appeal followed.

I

The ultimate issue in a summary process action is the right to possession. *Rosa* v. *Cristina,* 135 Conn. 364, 365, 64 A.2d 680 (1949); *Urban* v. *Prims,* 35 Conn. Sup. 233, 236, 406 A.2d 11 (1979). We agree with the trial court that under the circumstances of this case the plaintiff must prove good cause for its termination of the franchise in order to prove termination of the lease and thus prove its right to possession.

Ordinarily, the allegation of facts allocates the burden of proof to the party pleading them. See *Grecki* v. *New Britain,* 174 Conn. 200, 201, 384 A.2d 372 (1978). The plaintiff's claim for possession rests on early termination of the lease provisions, which in turn rests on termination of the franchise. In support of this claim it alleged in the complaint that the "defendant's right to occupy the premises has terminated by termination of the [franchise] agreement." We need not decide whether, under all circumstances, the burden of proof of good cause for termination of a franchise rests on the franchisor. Where, however, as here, the franchisor seeks to regain possession of premises leased under a franchise agreement on the ground that early termination of the franchise has terminated the lease and where the franchisor alleges such termination, it has the burden of proof thereon, including necessarily proof of good cause for the franchise termination.

The plaintiff argues in effect that the issue of whether the franchise was terminated for good cause is lodged

solely in the defendant's action against the plaintiff under General Statutes § 42-133g and that, once the defendant failed in his attempt to secure a temporary injunction in that action and once the sixty days for termination had expired, the issues in this case became factually simple: whether the plaintiff had in fact given notice of the termination of the franchise, thus terminating the lease, and whether the sixty day period had expired. Underlying this argument is the premise that General Statutes § 42-133g provides the sole remedy to a franchisee in a dispute with its franchisor over termination of the franchise. We disagree.

General Statutes §§ 42-133e and 42-133f, which form the heart of the Franchise Agreement Act, define the substantive rights and obligations of the franchisor-franchisee relationship. General Statutes § 42-133g provides that a franchisee may sue the franchisor in the Superior Court for violation of General Statutes §§ 42-113e and 42-113f; may recover damages, including attorney's fees; and where appropriate may apply for injunctive relief as provided in chapter 916, "Injunctions"; General Statutes §§ 52-471 through 52-483; and that the action is a privileged matter for trial. The Franchise Agreement Act, to which the Supreme Court has referred as legislation which "impose[s] limitations of just cause upon the power to terminate some contracts; see § 42-133f"; *Sheets* v. *Teddy's Frosted Foods, Inc.*, 179 Conn. 471, 474, 427 A.2d 385 (1980); is remedial in nature and thus should be liberally construed. *Muha* v. *United Oil Co.*, 180 Conn. 720, 728–29, 433 A.2d 1009 (1980). We see nothing in General Statutes § 42-133g to suggest that it excludes the franchisee's use, as a defense to an action by his franchisor, of claims of violation of those substantive rights and obligations. Had that section not been included in the act, we have no doubt that a franchisee would nonetheless have a cause of action against his franchisor for such a violation and,

would, "where appropriate," have had the right to request an injunction "as provided in chapter 916," which is simply the part of the general statutes stating the general rules on injunctions. Thus, except for the provisions involving privileged trial status and award of attorney's fees, General Statutes § 42-133g does no more than reaffirm remedies any franchisee would have had by virtue of General Statutes §§ 42-133e and 42-133f. Furthermore, the plaintiff's argument would interpolate the sixty day period for notice of termination, contained in General Statutes § 42-133f, into General Statutes § 42-133g as a statute of limitations attached to the franchisee's right to seek an injunction. We see no justification for such an interpolation.

## II

The plaintiff next argues that, even if this action be complex, significant recent changes in the law require that it not be dismissed. We agree. In recent years both legislative and judicial actions have resulted in an expansion of the role of summary process. We are persuaded that those actions are sufficient to require a finding of error by the trial court in dismissing this case.

We recognize that summary process is a statutory proceeding which is "intended to be summary and is designed to provide an expeditious remedy to the landlord seeking possession." *Prevedini* v. *Mobil Oil Corporation,* 164 Conn. 287, 292, 320 A.2d 797 (1973). Because of its summary nature, the statute granting the remedy has been narrowly construed and strictly followed. *Jo-Mark Sand & Gravel Co.* v. *Pantanella,* 139 Conn. 598, 600–601, 96 A.2d 217 (1953). Concomitant with its summary design, the legislature has mandated a truncated return day and appearance date; General Statutes §§ 47a-23a and 47a-26; and that pleadings shall advance in three day steps. General Statutes §§ 47a-26a and 47a-26c.

Consistent with the legislative purpose behind summary process there evolved a judicial gloss on the statute which limited its use "to cases where the issue of the expiration of the lease presents itself as a simple issue of fact, not complicated by questions as to the proper legal construction of the lease"; *Davidson* v. *Poli,* 102 Conn. 692, 695, 129 A. 716 (1925); which recognized "the policy of our law to limit the issues in an action for summary process to a few simple ones within the express scope of the statutory provisions"; *Webb* v. *Ambler,* 125 Conn. 543, 550-51, 7 A.2d 228 (1939); and which excluded from its ambit certain complex equitable defenses deemed to require a separate action to enjoin the summary process action. See *Atlantic Refining Co.* v. *O'Keefe,* 131 Conn. 528, 531, 41 A.2d 109 (1945). Thus, where the landlord's case necessarily involved complex issues, which did not appear to fall into the category of simple, uncomplicated issues, a summary process action was subject to dismissal. *Sigros* v. *Hygenic Restaurant, Inc.,* 38 Conn. Sup. 518, 452 A.2d 943 (1982); *Scinto* v. *Bridgeport Cash & Carry, Inc.,* 38 Conn. Sup. 514, 452 A.2d 940 (1980).

There have been significant developments in the law, however, which have necessarily and significantly dimmed that judicial gloss insofar as it concerns the claim of complexity. First, the original basis for the rule limiting summary process to simple questions no longer obtains.[6] That basis, articulated in *Davidson* v. *Poli,* supra, and tracing back to *DuBouchet* v. *Wharton,* 12 Conn. 533, 538 (1838), was that, since summary process actions were traditionally tried by justices of the peace in city courts, the legislature did not intend them to

---

[6] "It is revolting to have no better reason for a rule of law than that so it was laid down in the time of Henry IV. It is still more revolting if the grounds upon which it was laid down have vanished long since, and the rule simply persists from blind imitation of the past." Holmes, "The Path of the Law," 10 Harv. L. Rev. 457, 469 (1897).

embrace complicated legal or factual questions. Now, of course, they are tried by judges of the Superior Court.

Second, because of the merger of all trial courts into the Superior Court and the creation of the broad jurisdiction of its housing division, defenses involving complex equitable issues are now permitted. See *Mark I Enterprises, Inc.* v. *Sendele,* 37 Conn. Sup. 569, 572, 427 A.2d 1352 (1981); *Steinegger* v. *Fields,* 37 Conn. Sup. 534, 425 A.2d 597 (1980).

Third, the broad statutory jurisdiction of the housing division and the present statutory scope of summary process clearly go far beyond cases involving only a few simple issues. The housing division jurisdiction includes, in addition to summary process actions, such complex matters as actions and administrative appeals involving discrimination in the sale or rental of residential property; all actions under title 47a of the General Statutes, which includes all landlord and tenant disputes, tenement receiverships, actions for entry and detainer, and tenement house health and safety code violation cases; all housing safety code violation cases; rent receivership cases; and all actions concerning the health and safety of housing occupants arising from or related to that occupancy. General Statutes § 47a-68; see, e.g., *Dukes* v. *Durante,* 192 Conn. 207, 471 A.2d 1368 (1984) (appeal from the judgment of the housing division in a class action for permanent mandatory injunctive relief under the Connecticut Uniform Relocation Assistance Act). Summary process, formerly limited by statute to a few simple matters, now includes actions for possession by cooperative housing corporations against their members or shareholders, based on the breach of a lease by the members or shareholders; General Statutes § 47a-24; it may be defeated by the special defense of retaliatory eviction under General Statutes § 47a-33; and it requires the summary process

judge to determine the very complex issues raised by General Statutes § 47a-23c (b) in cases flowing from condominium conversions.[7] Thus, the same housing division that has entrusted to its docket the myriad complex cases listed in General Statutes § 47a-68 now also has a summary process docket which may embrace other complex issues as well.

Fourth, discovery has been recognized as available in summary process actions. *Housing Authority* v. *Boyd,* 36 Conn. Sup. 47, 410 A.2d 494 (1979).

---

[7] General Statutes § 47a-23c (b) provides as follows: "Prior to January 1, 1988, no landlord may bring an action under section 47a-23 against any lessee who (1) resides in a building or complex consisting of seven or more separate dwelling units and (2) (A) is blind as defined in section 1-1f or (B) is physically disabled as defined in section 1-1f and such disability can be expected to result in death or can be expected to last for a continuous period of not less than twelve months or (C) is sixty-two years of age or older, or whose spouse, sibling, parent or grandparent permanently residing with such lessee is sixty-two years of age or older, except for any one or more of the following reasons: (1) Nonpayment of rent; (2) refusal to agree to a legitimate and reasonable rent increase, as provided in this subsection; (3) material noncompliance with section 47a-11 which materially affects the health and safety of the other tenants or materially affects the physical condition of the premises; (4) material noncompliance with the rental agreement; (5) material noncompliance with the rules and regulations of the landlord adopted in accordance with section 47a-9; (6) permanent removal by the landlord of the dwelling unit of such lessee from the housing market; or (7) bona fide intention by the landlord to use such dwelling unit as his principal residence, except a dwelling unit in a conversion condominium occupied by a lessee who was residing in the unit at the time of the notice of conversion and was protected from eviction by the provisions of this subsection. The provisions of this subsection shall not apply to any landlord who first entered into a rental agreement with such lessee for the dwelling unit after such dwelling unit had been declared a condominium or a conversion condominium, unless that lessee was residing in the unit at the time of the notice of the conversion and was protected from eviction by the provisions of this subsection, or any landlord who declared such dwelling unit as a conversion condominium, delivered a public offering statement to the lessee of such dwelling unit and entered into a contract for the sale or renovation of such dwelling unit prior to May 7, 1980. A landlord may pass on to any lessee protected by the provisions of this subsection only legitimate and reasonable rent increases, based on the criteria set forth in section 7-148c, including the cost of any assessment for cur-

Fifth, General Statutes § 47a-70 (a) provides in relevant part that any housing matter brought to the housing docket of a judicial district which has a housing division may be transferred "to the regular docket for a geographical area or judicial district if [the housing judge] determines . . . that such docket is more suitable for the disposition of the case. Any case so . . . transferred . . . shall be proceeded upon as are other cases of like nature standing on such docket." Thus, the housing judge has the discretion, apparently exercised in this case, to transfer to the regular civil docket of the judicial district a summary process action which, because of its complexity, would formerly have been outside the ambit of summary process.

These significant changes persuade us that the legislature no longer considers summary process as necessarily excluding complex questions which would formerly have required its dismissal. As we read the current statutory scheme, where, as here, such a summary process action is brought in the first instance to the housing division, as it must be, and the issue of complexity is raised, the housing division judge must exercise the court's discretion in deciding whether to hear the case. That discretion includes, inter alia, the degree of complexity of the factual and legal issues, the likely time requirements for trial, the need for discovery and the degree of discovery which is reasonably required, whether complex defenses will be raised in good faith, the impact of hearing the case on the rest of the summary process docket, and whether other actions for similar relief are pending elsewhere. See *Sigros* v.

rent common expenses, in accordance with subsection (b) of section 47-76, to the extent not already included in the rent. Any such lessee aggrieved by such an increase may submit his complaint to the fair rent commission of the town, city or borough where such dwelling unit is located, if any such commission exists, or, if none exists, may bring an action in the superior court and the court shall consider the criteria set forth in section 7-148c in determining if such an increase is legitimate and reasonable."

*Hygenic Restaurant, Inc.,* supra, 520. The result of this exercise of discretion will be either that the housing division retains the case or that it determines the regular civil docket of the judicial district to be more suitable for the disposition of the case, in which event the case shall be transferred to that docket. General Statutes § 47a-70 (a). Upon that transfer, the remedy for its complexity is not dismissal; the remedy is that it "shall be proceeded upon as are other cases of like nature standing on such docket." General Statutes § 47a-70 (a).[8] The timing and nature of that proceeding must, however, be left to the broad discretion of the judicial district court, and may include joinder with any other related actions pending between the parties. Furthermore, since by statute the case must now be "proceeded upon as are other cases of like nature standing on such docket," the judicial district court has the discretion to relax the timing of the pleadings to conform to that of other civil actions. If this renders the pace of the case less than summary, the landlord cannot be heard to complain, for General Statutes § 47a-70 (a) has substituted such a proceeding for what would have otherwise been a dismissal.

We do not imply by this decision that in the ordinary summary process action the ordinary summary pace can now be stalled by the defendant's simply raising the spectre of a complexity which is not, as it is in this case, rooted in the nature of the relationship between landlord and tenant and in the basis of the landlord's claim to possession; or simply by the defendant's threat to raise complex defenses which are not likely to be

[8] We need not decide here whether the dismissal of a complex summary process case is still required in court locations which do not have a housing division and thus where General Statutes § 47a-70 (a) does not apply; or whether the legislative policy declared by that section may be used as the basis for the court to take similar action. We note, however, that most of the more populous judicial districts now have housing divisions. See General Statutes § 47a-70 (a).

asserted in good faith;[9] or simply by the defendant's filing a dilatory motion for discovery which is not reasonably necessary to the prompt and fair disposition of the case. Nor do we expect that housing division judges will simply pass on any difficult summary process cases to already overcrowded dockets under General Statutes § 47a-70 (a). Indeed, our perusal of several unreported housing division decisions, brought to our attention by the parties, issued in response to claims of undue complexity indicates that those judges are more than able to glean the wheat from the chaff and more than willing to shoulder their part of the burden under the broad jurisdictional grant of General Statutes § 47a-68. We hold by this decision only that, because of the changes in legislative and judicial policy which we have discussed, the trial court erred in dismissing this case.

## III

The defendant claims that the judgment of the trial court should nonetheless be affirmed because of the plaintiff's pending counterclaim and other action, both seeking possession, and because the plaintiff's notice to quit is defective. The defendant properly preserved for review these alternate grounds by filing a preliminary statement of issues under Practice Book § 3012 (a).

The defendant's first. claim in this regard is based on the rule that the pendency of a *prior* action between the same parties, in the same jurisdiction and to the same end, is ground for dismissal. See *Henry F. Raab Connecticut, Inc.* v. *J. W. Fisher Co.*, 183 Conn. 108, 112, 438 A.2d 834 (1981). While recognizing that neither the plaintiff's counterclaim nor its other action

---

[9] We note that in this case the defendant brought a separate action in which he litigated an attempt to secure a temporary injunction based on the claims which he presumably intends to present here as special defenses.

preceded this case, the defendant argues that the reasoning behind that rule requires its application here. We disagree. The rule, which is not one of unbending rigor or universal application; id., 113; is based on the notion that " 'there cannot be any reason or necessity for bringing the second [action], and, therefore, it must be oppressive and vexatious.' " Id., 112. Here the subsequent counterclaim was filed in response to the defendant's separate action for injunctive relief and damages, and the plaintiff's separate action was obviously filed as a response to the uncertainty of whether this action would survive. Under these circumstances we do not see the retention of this action as either oppressive or vexatious.

The defendant next claims that the notice to quit, which demanded that the defendant quit the premises because "your right or privilege to occupy such premises has terminated," was fatally defective. We disagree.

We recognize the principle that, because of the summary nature of its remedy, the summary process statute has been narrowly construed and strictly followed. *Jo-Mark Sand & Gravel Co.* v. *Pantanella,* supra, 600–601. This principle does not require, however, the invalidity of this notice to quit. First, the language of the notice substantially tracks that of General Statutes § 47a-23 (a), which sets as one of the bases of a notice to quit that "one originally had the right or privilege to occupy such premises but such right or privilege has terminated." Second, this notice followed hard on the heels of the plaintiff's notice of termination of the franchise, which had "the cause stated thereon"; General Statutes § 42-133f (a); and hard on the heels of the decision by the court denying the defendant's separate application for a temporary injunction against termination of the franchise. Thus, it is inconceivable that the defendant did not know that the basis for the claim

of termination of his right to occupy the premises was the claimed termination of the franchise. Even under the strict construction rule of *Jo-Mark Sand & Gravel Co.* v. *Pantanella,* supra, it would be the height of hypertechnicality to hold this notice to quit defective.

There is error, the judgment is set aside and the case is remanded for further proceedings.

In this opinion the other judges concurred.