JEFFREY P. OSSEN *v.* GAIL WANAT ET AL.
(7575)

SPALLONE, DALY and NORCOTT, Js.

Argued January 3—decision released March 13, 1990

*F. Woodward Lewis, Jr.,* with whom was *Robert J. Mead,* for the appellants (defendants).

*Barry T. Pontolillo,* with whom, on the brief, was *M. Frances Reese,* for the appellee (plaintiff).

NORCOTT, J. This appeal involves a summary process action in which the trial court rendered judgment in favor of the plaintiff, Jeffrey P. Ossen. The defendants[1] appeal from that judgment claiming that the trial court erred (1) in finding that an oral month-to-month tenancy existed between the plaintiff and the defendant Gail Wanat, (2) in refusing to allow the defendants to sell their mobile home on the leased park site during the pendency of the summary process action, (3) in refusing to consider constitutional challenges to the summary process action,[2] (4) in denying the defendants'

---

[1] The defendants are Gail Wanat, owner of the mobile home, Joseph Driscoll and Eugene Ellis, estranged husband of Gail Wanat's daughter, Laura Ellis.

[2] The defendants' constitutional issues were set forth in their first and second "substituted special defenses" as follows:

"First Special Defense

\* \* \*

"6. The summary process statutory procedure for mobile homes in Connecticut is unconstitutional as applied in this case because the plaintiff's taking of the equitable property interest in the defendant's mobile home is a taking without notice of the interest being taken, a taking without a hearing as to the value of the said equitable interest and, finally, it is a taking without just compensation in violation of Article Five and the due process requirements of notice and an opportunity to be heard of Article Five of the Fourteenth Amendment of the United States Constitution, and including violations of Article I, Section 10 of the Constitution of the State of Connecticut when the defendant is not being allowed to sell her mobile home on the lot.

"Second Special Defense

\* \* \*

"6. The summary process statutory procedure for mobile homes in Connecticut is unconstitutional as applied in this case because the plaintiff's taking of the equitable property interest in the defendant's mobile home is also a violation of the equal protection clause of the Fourteenth Amendment because it has the effect of taking an equitable property interest with-

motion to dismiss and Laura Ellis' claim for exemption from judgment because of a lack of service on her of a notice to quit, and (5) in taxing expenses, including attorney's fees, on the defendants. We find no error.

The following procedural history is germane to this appeal. In 1985, the plaintiff and the defendant Gail Wanat entered into a written lease for lot twenty-four of the Three Oaks Mobile Home Park in Wallingford, owned by the plaintiff. On March 16, 1985, the plaintiff served the defendants with a notice to quit for failure to pay rent; he also informed the defendants, in a letter dated April 8, 1985, that future rental payments would be refused. No further action was taken on this notice to quit, even though the defendants continued to live in the mobile home, without paying rent, until 1988.

On May 14, 1988, the plaintiff served the defendants with another notice to quit, this one purporting to terminate an oral month-to-month agreement that existed between the parties since 1985. On July 7, 1988, the plaintiff filed the present action alleging the termination of an oral lease and demanding immediate possession.

On August 15, 1988, after Wanat informed the plaintiff of her desire to sell the mobile home, the defendants moved for a stay of the proceedings, and the next day the defendants filed a motion for permission to sell the mobile home. The trial court, *Gaffney, J.,* denied

out notice, hearing or compensation as a result of 'summary process action.' It also has the effect of treating mobile home owners differently from all of the other tenants in the state in that the taking of the equitable interest in other homeowners' property requires a foreclosure action, and including violations of Article 1, Section 20 of the Constitution of the State of Connecticut when the defendant is not being allowed to sell her mobile home on the lot."

both motions. On October 21, 1988, the trial court granted the plaintiff's motion to strike the defendants' twelve special defenses and a counterclaim asserting that the defendants were unjustly denied the right to sell their mobile home pursuant to the procedures set forth in General Statutes § 21-79.[3] The defendants moved to dismiss the proceeding because the notice to quit was not served on Laura Ellis, daughter of the defendant Gail Wanat and an alleged subtenant, and therefore did not meet the requirements of General Statutes § 47a-26h. After a hearing, this motion too was denied by the court. Thereafter, on November 18, 1988, the court, *Gaffney, J.*, rendered judgment awarding possession to the plaintiff. The court reserved judgment, pending another hearing, on the plaintiff's motion for taxation of costs.

On January 31, 1989, Judge Gaffney issued a memorandum of decision in which he taxed expenses in favor of the plaintiff in the amount of $25 and allowed him to recover attorney's fees in the amount of $250 because of the weakness of the defendants' case and because of the defendants' "abusive pleadings." The defendants' appeal followed.

After this appeal had been filed, Laura Ellis filed a claim for exemption on March 29, 1989. She based her claim upon the same argument asserted in the defendants' motion to dismiss, that she was entitled to notice because she was a subtenant in the mobile home. The

---

[3] "[General Statutes ] Sec. 21-79. OWNER PROHIBITED FROM RESTRICTING RESIDENT'S RIGHT TO SELL. (a) No owner or operator of a mobile manufactured home park shall require a resident who owns a mobile manufactured home which is safe, sanitary and in conformance with aesthetic standards to remove the home from the development at the time such mobile manufactured home is sold or a mortgage on such a home is foreclosed provided that the purchaser or foreclosing mortgagee shall assume and be bound by the rental agreement of the foreclosed mortgagor and shall be bound by the rules and regulations of the park."

court, *Ripley, J.,* denied her claim, and the defendants filed an amended appeal raising this denial as part of their issue that the trial court erred in finding that Laura Ellis was not entitled to notice.

With respect to the defendants' first claim of error, we note that the single issue in the underlying summary process action was whether the defendants had failed to pay the rent due and owing to the plaintiff for the period noticed in the complaint. The record clearly supports the court's conclusion that they had not paid the rent. The record also contains ample evidence from which the court could reasonably have concluded that the parties began an oral month-to-month tenancy at the termination of their written lease. On review, we will not invade the factfinding province of the trial court or disturb its legal conclusions when they are sufficiently supported by the evidence before it. *Bowman* v. *1477 Central Avenue Apartments, Inc.,* 203 Conn. 246, 256–57, 524 A.2d 610 (1987).

The defendants next argue that the trial court erred in denying their motion to sell their mobile home during the pendency of a summary process action in order to satisfy arrearages owed the plaintiff. As authority for their right to sell, the defendants cite General Statutes § 21-79. "Section 21-79 protects tenants at mobile home parks from being forced to sell to park owners at a substantial loss and as a consequence benefits many low income people who cannot otherwise afford to purchase more expensive housing." *Eamiello* v. *Liberty Mobile Home Sales, Inc.,* 208 Conn. 620, 648, 546 A.2d 805 (1988), appeal dismissed, 489 U.S. 1002, 109 S. Ct. 1104, 103 L. Ed. 2d 169 (1989). General Statutes § 21-80 (b) (1) (A), on the other hand, specifically provides in pertinent part that "an owner [of a mobile manufactured home park] may terminate a rental agreement or maintain a summary process action against a resident who owns his mobile manufactured

home only for one or more of the following reasons: (A) Nonpayment of rent, utility charges or reasonable incidental services charged . . . ." Furthermore, "[s]ection 21-80 (b) (4) provides that unless otherwise specified, 'proceedings under this chapter [412] shall be prescribed under Chapter 832,' the general summary process chapter." *Ossen* v. *Kreutzer,* 19 Conn. App. 564, 569, 563 A.2d 741 (1989). It is clear from a review of the relevant statutes that they provide for no such procedure as the defendants suggest, namely, selling the mobile home to pay rent arrearages once a summary process action for nonpayment of rent has begun.

The defendants' next claim requires little discussion. In essence, the defendants claim that the trial court's interpretation of the statutory scheme addressing summary process and mobile homes resulted in a deprivation of their constitutional right to sell their mobile home. We disagree.

Summary process is a straightforward action limited to a few simple questions of fact. *Davidson* v. *Poli,* 102 Conn. 692, 695, 129 A. 716 (1925); *Yarbrough* v. *Demirjian,* 17 Conn. App. 1, 3, 549 A.2d 283, cert. denied, 209 Conn. 828, 552 A.2d 434 (1988); *Scinto* v. *Bridgeport Cash & Carry, Inc.,* 38 Conn. Sup. 514, 516–17, 452 A.2d 940 (1980). While in certain cases complex issues may necessarily be a part of the action; *Southland Corporation* v. *Vernon,* 1 Conn. App. 439, 445–51, 473 A.2d 318 (1984); the ordinary summary pace cannot be "stalled by the defendant's simply raising the spectre of a complexity which is not . . . rooted in the nature of the relationship between landlord and tenant and in the basis of the landlord's claim to possession; or simply by the defendant's threat to raise complex defenses which are not likely to be asserted in good faith . . . ." (Footnote omitted.) Id., 450–51. The resolution of the complex constitutional issues, which the court found were not brought in good

faith, has no place in this summary process action. We agree with the trial court's conclusion that the constitutional issues that the defendants attempted to raise "are far beyond the scope of the statutory action that is before the Court." The trial court did not err in refusing to consider the defendants' constitutional claims in the context of this summary process action and in striking them from the pleadings.[4]

The defendants' claims that the court erred in denying their motion to dismiss and Laura Ellis' subsequent claim of exemption from judgment are also without merit. The defendants argue that Laura Ellis, Wanat's daughter, should have been a defendant in this action and was entitled to notice because she was a "subtenant" in the mobile home whose presence was known to the landlord. In a hearing on the motion to exempt, the court, *Ripley, J.*, heard testimony from both mother and daughter and from the plaintiff. After the hearing, the court concluded, in a written memorandum of decision dated May 10, 1989, that "the plaintiff has demonstrated through the testimony of the claimant that she was not an occupant of the premises at the time of commencement of the summary process action," and that, accordingly, she was not entitled to notice under law.

The weight and credibility to be accorded witnesses is totally within the purview of the trier of fact. *Temple* v. *Meyer,* 208 Conn. 404 , 407, 544 A.2d 629 (1988); *State* v. *Crump,* 201 Conn. 489, 491, 518 A.2d 378 (1986). Absent any clear error, we will not disturb the trial court's legal conclusions that are based on ample evidence in the record. *Temple* v. *Meyer,* supra. There is no such error here.

---

[4] As this court acknowledged in *Southland Corporation* v. *Vernon,* 1 Conn. App. 439, 451, 473 A.2d 318 (1984), the judges who are presented with a case involving claims of undue complexity in summary process actions "are more than able to glean the wheat from the chaff."

The defendants finally contend that the trial court erred in taxing expenses, including attorney's fees, in favor of the plaintiff. We disagree.

Practice Book § 111[5] authorizes the trial court to tax reasonable expenses, including attorney's fees incurred by an opposing party, when the court finds that a party has made an allegation or denial in the pleadings that is without reasonable cause and is untrue. This section, in effect, authorizes the court to impose sanctions on a party for resorting to bad faith pleading. Here, Judge Gaffney found that the defendants' answer, a general denial coupled with twelve special defenses that went beyond the scope of the summary process action, constituted improper pleading and was "calculated to enhance the plaintiff's burden of proof."

"[T]he task of determining whether sanctions should be imposed is inherently fact bound, and requires carefully circumscribed discretion to be exercised by the trial court." *Fattibene* v. *Kealey,* 18 Conn. App. 344, 362, 558 A.2d 677 (1989). Good faith pleading must be judged in the light of all the circumstances existing at the time the pleading was filed. *State* v. *Anonymous (1974–5),* 31 Conn. Sup. 179, 180–81, 326 A.2d 837 (1974); see also 1 W. Moller & W. Horton, Connecticut Practice Book Annotated (1989) § 111, p. 279. "To determine whether the bad faith exception applies, the court must assess whether there has been substantive bad faith as exhibited by, for example, a

---

[5] Practice Book § 111 provides:

"Sec. 111. ——UNTRUE ALLEGATIONS OR DENIALS

"Any allegation or denial made without reasonable cause and found untrue shall subject the party pleading the same to the payment of such reasonable expenses, to be taxed by the court, as may have been necessarily incurred by the other party by reason of such untrue pleading; provided that no expenses for counsel fees shall be taxed exceeding two hundred fifty dollars for any one offense. Such expenses shall be taxed against the offending party whether he prevails in the action or not."

party's use of oppressive tactics *or its wilful violations of court orders;* '[t]he appropriate focus for the court . . . is the conduct of the party in instigating or maintaining the litigation.' " (Emphasis added.) *Fattibene* v. *Kealey,* supra, 361.

The court, in its memorandum of decision, carefully reviewed the entire pleadings. In so doing, it specifically noted that, by renewing in later pleadings three of their twelve special defenses previously stricken, the defendants wilfully violated the order to strike and exhibited an attitude toward the pleadings that the court found not to be conducive to good faith pleading. In our review of the trial court's action, we find that the trial court did not abuse the discretion vested in it by Practice Book § 111 in taxing the defendants $25 in expenses and $250 in counsel fees.[6]

There is no error.

In this opinion the other judges concurred.

---

[6] With respect to the $25 expenses, the trial court concluded that "the plaintiff incurred expenses in connection with a subpoena of the defendant Wanat to compel her attendance at trial, such attendance and testimony being a necessary consequence of the untrue pleading."