JEFFREY P. OSSEN *v*. GAIL WANAT ET AL.
(13936)

PETERS, C. J., SHEA, GLASS, COVELLO and SANTANIELLO, Js.

Argued November 9, 1990—decision released February 5, 1991

*F. Woodward Lewis, Jr.,* for the appellant (named defendant).

*Barry T. Pontolillo,* for the appellee (plaintiff).

COVELLO, J. This is a summary process action involving a mobile home site. The trial court, *Gaffney, J.,* rendered judgment for possession in favor of the plaintiff, Jeffrey P. Ossen. The defendants, Gail Wanat, Joseph Driscoll, Eugene Ellis and Laura Ellis, appealed to the Appellate Court. The dispositive issues are: (1) whether the trial court was required to determine the defendants' constitutional claims within the context of a summary process action; and (2) whether the defendants were entitled to sell their mobile home on site pursuant to General Statutes § 21-79 during the pendency of the summary process action. We conclude that the Appellate Court correctly resolved both issues in favor of the plaintiff and therefore affirm the judgment of the Appellate Court.

In 1985, the plaintiff leased to the defendants a mobile home site in Three Oaks Mobilehome Park, Wallingford. On May 14, 1988, the plaintiff served a notice to quit possession upon the defendants on or before June 16, 1988, claiming nonpayment of rent.[1] On July 7, 1988, the plaintiff began the present action alleging the defendants' continuing occupancy of the premises despite the passage of the time designated in the notice to quit and seeking a judgment of possession in accordance with the statute.[2]

On August 15, 1988, the defendants moved for a stay of the proceedings and simultaneously sought permission to sell the mobile home on the leased premises in accordance with General Statutes § 21-79.[3] On August 26, 1988, the trial court, *Stanley, J.,* denied both motions.

On October 21, 1988, the trial court granted the plaintiff's motion to strike the defendants' three special defenses including, inter alia, a claim of an unconstitutional taking, a violation of due process and a denial of equal protection, all in violation of the fifth and four-

---

[1] General Statutes (Rev. to 1987) § 47a-23 (a) as amended by Public Acts 1987, No. 87-507, § 1, provides: "When a . . . lease of . . . any land upon which a trailer is used or stands . . . terminates [for nonpayment of rent] . . . and the . . . lessor . . . desires to obtain possession . . . of the same . . . he or they shall give notice to each lessee . . . to quit possession of such land . . . at least eight days before . . . the time specified in the notice for the lessee . . . to quit possession . . . ."

[2] General Statutes § 47a-23a (a) provides: "If, at the expiration of the eight days the lessee or occupant neglects or refuses to quit possession or occupancy of the premises, any commissioner of the superior court may issue a writ, summons and complaint . . . which shall set forth facts justifying a judgment for immediate possession or occupancy of the premises and make a claim for possession or occupancy of the premises. . . ."

[3] General Statutes § 21-79 (a) provides in part: "No owner or operator of a mobile manufactured home park shall require a resident who owns a mobile manufactured home which is safe, sanitary and in conformance with aesthetic standards to remove the home from the development at the time such mobile manufactured home is sold . . . ."

teenth amendments to the United States constitution and article first, § 10 of the Connecticut constitution.[4] At the same time, the trial court struck the defendants' counterclaim that sought an injunction restraining the plaintiff's interference with the defendants' sale of their mobile home on the leased premises. On November 18, 1988, the trial court, *Gaffney, J.,* rendered judgment for possession in favor of the plaintiff.

The defendants appealed to the Appellate Court, which thereafter affirmed the judgment of the trial court. Upon the petition of the defendant Gail Wanat (defendant), we granted certification limited to the issues of: (1) whether the trial court was required to determine the defendants' constitutional claims within the context of a summary process action; and (2) whether the defendants were entitled to sell their mobile home on

---

[4] The defendants' constitutional claims were set forth in their first and second "substitute special defenses" as follows: "First Special Defense. . . . 6. The summary process statutory procedure for mobile homes in Connecticut is unconstitutional as applied in this case because the plaintiff's taking of the equitable property interest in the defendant's mobile home is a taking without notice of the interest being taken, a taking without a hearing as to the value of the said equitable interest and, finally, it is a taking without just compensation in violation of Article Five and the due process requirements of notice and an opportunity to be heard of Article Five of the Fourteenth Amendment of the United States Constitution, and including violations of Article I, Section 10 of the Constitution of the State of Connecticut when the defendant is not being allowed to sell her mobile home on the lot.

"Second Special Defense . . . . 6. The summary process statutory procedure for mobile homes in Connecticut is unconstitutional as applied in this case because the plaintiff's taking of the equitable property interest in the plaintiff's [sic] mobile home is also a violation of the equal protection clause of the Fourteenth Amendment because it has the effect of taking an equitable property interest without notice, hearing or compensation as a result of 'summary process action.' It also has the effect of treating mobile home owners differently from all of the other tenants in the state in that the taking of the equitable interest in other homeowners' property requires a foreclosure action, and including violations of Article I, Section [10] of the Constitution of the State of Connecticut when the defendant is not being allowed to sell her mobile home on the lot."

site pursuant to General Statutes § 21-79 during the pendency of the summary process action. We answer both questions in the negative and affirm the decision of the Appellate Court.

I

The defendant's first claim is that the trial court was required to take up and address in the summary process action the constitutional issues raised in their first and second special defenses, and that the Appellate Court should not have concluded that the trial court was not required to do so.

"It has always been the policy of our law to limit the issues in an action of summary process to a few simple ones within the express scope of the statutory provisions." *Webb* v. *Ambler,* 125 Conn. 543, 550–51, 7 A.2d 228 (1939). "Because of the summary nature of this remedy, the statute granting it has been narrowly construed and strictly followed." *Jo-Mark Sand & Gravel Co.* v. *Pantanella,* 139 Conn. 598, 600–601, 96 A.2d 217 (1953). "The purpose of summary process proceedings . . . is to permit the landlord to recover possession on termination of a lease . . . without suffering the delay, loss and expense to which he may be subjected under a common-law action. . . . The process is intended to be summary and is designed to provide an expeditious remedy to the landlord seeking possession." *Prevedini* v. *Mobil Oil Corporation,* 164 Conn. 287, 292, 320 A.2d 797 (1973).

Concededly, statutory modifications have created new rights and remedies within the context of the landlord and tenant relationship. A tenant may now plead by way of special defense, first, that the landlord has breached an implied warranty of habitability,[5] or sec-

---

[5] General Statutes § 47a-4a provides: "A rental agreement shall not permit the receipt of rent for any period during which the landlord has failed to comply with subsection (a) of section 47a-7 [landlord's responsibilities]."

ond, that the landlord's claim for possession is a retaliatory act motivated by the tenant's attempt to correct substandard conditions on the leased premises.[6] Despite these additional remedies, the legislature, in its recodification and reenactment of the entire summary process chapter, saw fit to leave in place provisions for an abbreviated return day,[7] and an accelerated appearance, pleading and judgment procedure,[8] all of which comport with earlier notions of the summary nature of these proceedings. The fact remains that unless the tenant can prove payment of rent, the existence of a lease, one of the special defenses above, or superior title in the premises, he or she must yield possession.[9]

"We agree with the trial court's conclusion that the constitutional issues that the defendants attempted to

[6] General Statutes § 47a-33 provides in relevant part: "In any action for summary process . . . it shall be an affirmative defense that the plaintiff brought such action solely because the defendant attempted to remedy, by lawful means . . . any condition constituting a violation of any . . . statute or regulation or of the housing or health ordinances of the municipality wherein the premises . . . lie." See also General Statutes §§ 47a-20 and 47a-20a.

[7] General Statutes § 47a-23a (a) provides in part: "Such complaint may be made returnable six days, inclusive, after service upon the defendant and shall be returned to court at least three days before the return day."

[8] General Statutes § 47a-26 provides in part: "If the defendant does not appear within two days after the return day and a motion for judgment for failure to appear and an endorsed copy of the notice to quit is filed with the clerk, the court shall forthwith enter judgment that the complainant recover possession or occupancy of the premises . . . ."

General Statutes § 47a-26a provides in part: "If the defendant appears but does not plead within three days after the return day, the complainant may file a motion for judgment for failure to plead . . . . If the defendant fails to plead within three days after receipt of such motion by the clerk, the court shall forthwith enter judgment that the complainant recover possession or occupancy with his costs."

General Statutes § 47a-26c provides: "All pleadings, including motions, shall advance at least one step within each successive period of three days from the preceding pleading or motion."

[9] For alternate equitable defenses see *Fellows* v. *Martin,* 217 Conn. 57, 584 A.2d 458 (1991).

raise 'are far beyond the scope of the statutory action that is before the Court.' " *Ossen* v. *Wanat,* 21 Conn. App. 40, 46, 571 A.2d 134 (1990).

## II

The defendant next claims that the defendants were entitled to sell their mobile home on its site during the pendency of the summary process action and that the Appellate Court should not have affirmed the trial court's decision not to permit this. In support of her position, the defendant relies upon General Statutes § 21-79. Section 21-79 provides in pertinent part: "(a) No owner or operator of a mobile manufactured home park shall require a resident . . . to remove the home from the development at the time such mobile manufactured home is sold . . . . (e) Any resident wishing to sell his or her home shall request a written statement of the [park] owner's intentions regarding the condition of the home. Within twenty days after receipt of such a request, the owner shall approve the home's condition for resale or deliver a written statement to the resident specifying the reasons" for denying approval. The defendant claims that they have complied with the provisions of § 21-79 and, therefore, have a right to sell the mobile home during the summary process action.

"Section 21-79 protects tenants at mobile home parks from being forced to sell to park owners at a substantial loss and as a consequence benefits many low income people who cannot otherwise afford to purchase more expensive housing." *Eamiello* v. *Liberty Mobile Home Sales, Inc.,* 208 Conn. 620, 648, 546 A.2d 805 (1988), appeal dismissed, 489 U.S. 1002, 109 S. Ct. 1104, 103 L. Ed. 2d 169 (1989). Section 21-79, however, does not lend support to the procedure advanced by the defendant. Section 21-79 nowhere permits a defendant to use its right to sell its mobile home to delay a summary process action. Furthermore, § 21-79 must be read in con-

junction with the rest of the chapter. For example, General Statutes § 21-80 (b) (1) (A) contains a list of permitted circumstances in which a park owner may bring a summary process action and specifically states that "an owner [of a mobile home park] may terminate a rental agreement or maintain a summary process action against a resident who owns his mobile manufactured home only for one or more of the following reasons: (A) Nonpayment of rent, utility charges or reasonable incidental services charges . . . ." Nowhere does § 21-80 include the limitation on a park owner's right to evict a nonpaying tenant as claimed by the defendant.

"[I]t is an elementary rule of construction that all sections of an act relating to the same subject matter should be considered together . . . . Insofar as possible the separate effect of each individual part or section of an act is made consistent with the whole." 2A J. Sutherland, Statutory Construction (4th Ed. 1984) § 47.06. Read together, §§ 21-79 and 21-80 (b) (1) (A) thus permit a resident generally to sell his or her mobile home but preserve the right of a mobile home park owner to evict a resident for nonpayment of rent with thirty days notice. The two sections do not in any way suggest that § 21-79 is to be read to limit the right of a park owner to initiate a summary process action based upon any of the grounds specified in § 21-80 including nonpayment of rent. Furthermore, such a construction is consistent with the intent of the legislature that a summary process action be an accelerated and relatively straightforward procedure. The interpretation advanced by the defendant would create the potential for delay without any express authority in the statute. We conclude that the trial court correctly decided that § 21-79 does not give a party the right to delay a summary process action pending the on-site sale of a mobile home.

The judgment is affirmed.

In this opinion PETERS, C. J., GLASS and SAN-TANIELLO, Js., concurred.

SHEA, J., concurring. I agree with the conclusion of the majority in Part II that there is no merit in the special defenses and counterclaim of the defendants, which are premised upon a claimed right to continue to occupy the premises despite their failure to pay the rent as agreed. Accordingly, I concur in the affirmance of the judgment of possession.

I disagree, however, with Part I, in which the majority holds that in a summary process action the issues are so limited "that unless the tenant can prove payment of rent, the existence of a lease, one of the special defenses [specified by General Statutes § 47a-4a (breach of landlord's responsibilities) or General Statutes § 47a-33 (retaliatory eviction)], or superior title in the premises, he or she must yield possession." We recently held in *Fellows* v. *Martin*, 217 Conn. 57, 62, 584 A.2d 458 (1991), "that there is no longer sufficient justification for the old prohibition against the application of equitable principles barring forfeitures to summary process; that the prohibition, arising from an obsolete system, is itself obsolete; and that equitable defenses and counterclaims implicating the right to possession are available in a summary process proceeding." The majority opinion alludes to *Fellows* in a footnote, but does not purport to distinguish or overrule it. Thus, the law of summary process is left in a perplexing state, bound to create confusion in the lower courts.

In the present case, the special defenses and the counterclaim, which sought only equitable relief, did implicate the right to possession of the premises,

because the defendants claimed they were entitled to occupy the premises, despite their failure to pay rent, until they were able to exercise the right granted by General Statutes § 21-79 (e) to sell their mobile home together with a right accorded to the purchaser to continue occupying the premises. Although I agree that this claim of the defendants is unsound, I conclude that the trial court should have addressed it on its merits, as the majority has done in Part II.