******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

KENOSIA COMMONS, INC. *v.* CYNTHIA
DACOSTA ET AL.
(AC 37396)

Lavine, Mullins and Schaller, Js.

*Argued October 8—officially released December 15, 2015*

(Appeal from Superior Court, judicial district of
Danbury, Housing Session, Russo, J.)

*Colin P. Mahon*, with whom, on the brief, was
*Thomas T. Lonardo*, for the appellant (plaintiff).

*Opinion*

LAVINE, J. The plaintiff, Kenosia Commons, Inc., appeals from the judgment of the trial court rendered in favor of the defendants, Cynthia DaCosta and Candra DaCosta, in this summary process action. On appeal, the plaintiff claims that the trial court improperly concluded that by virtue of Cynthia DaCosta's ownership of shares of stock in the plaintiff corporation she is not subject to summary process proceedings pursuant to General Statutes § 21-80. We reverse the judgment of the trial court.[1]

We glean the following facts and procedural history from the court file and trial transcript. On June 30, 2014, the plaintiff had a complaint served on the defendants. The complaint alleged that the plaintiff, as the lessor, and the defendants, as the lessees, had entered into an oral lease for the use and occupancy of 46 Kenosia Avenue lot 10 (lot 10) in Danbury. The initial monthly rent of $425 was payable on the first day of May, 2014, and on the first day of each month thereafter. The defendants took possession of lot 10 pursuant to the oral lease and still occupy it, but they have failed to pay the rent due under the lease for May, 2014. The plaintiff caused a notice to quit to be served on the defendants on or about May 12, 2014.[2] The complaint further alleged that the defendants have failed to tender the total arrearage due the plaintiff within the time stated in the notice to quit. Moreover, although the time designated for the defendants to quit the premises has passed, the defendants continue in possession. In its prayer for relief, the plaintiff sought a judgment of possession. The defendants responded to the complaint by filing Judicial Branch Form JD-HM-5, pleading that they "do not know" with respect to each paragraph of the complaint.

Following a series of continuances requested by the defendants, the matter was tried to the court on October 6, 2014. The plaintiff presented evidence that it is a mixed-use mobile home or manufactured housing community in Danbury; it has twenty-nine lots, a house, and several apartments. It is the only manufactured housing community cooperative in the state. Although the plaintiff does not own the mobile manufactured home occupied by the defendants, it owns the land beneath it. The monthly rent per lot is $425. As of May 1, 2014, the defendants were delinquent in paying rent for lot 10 in the amount of $2297.78. The defendants have not paid the plaintiff rent since they were served with the notice to quit.

Cynthia DaCosta testified that she moved onto lot 10 in early 2011 after purchasing a home from Plaza Modular and Mobile Homes. She received and signed a lease for lot 10 in February, 2011. She testified that "we're a *co-op*, so you buy shares to be in the park, I paid $2500 for twelve shares." (Emphasis added.) She also testified

that she and her family encountered difficult circumstances that prevented her from being able to pay rent for lot 10. At the conclusion of evidence, the court heard the parties' arguments.

Counsel for the plaintiff stated that § 21-80 is the summary process statute applicable to mobile homes. Specifically, he argued that the statute provides that "for a nonpayment of rent by a resident, you must give them thirty days notice and must include the arrearage, and if the arrearage is tendered in full prior to the expiration of the thirty days on the notice to quit, then the park owner must accept it and reinstate the person." Cynthia DaCosta argued that the defendants are not trying "to shirk anything" or get out of paying their bills. The plaintiff has refused to accept her plan to pay the arrearage, demanding, instead, full payment.

The court took the matter on the papers, but later ordered the parties to appear for a posttrial hearing on November 3, 2014. When the case was called, the court stated: "[W]e had a—a trial on the merits of the complaint filed by [the plaintiff] and testimony was received. And, in reviewing the file, the court found other matters that had been pending here in Danbury Superior Court involving [the plaintiff]. And it came to the court's attention that this could be set up where a person could be a tenant and an owner at the same time, which was never addressed at the trial, and I need to hear whether Ms. DaCosta is a tenant or a tenant-owner. If she's a tenant-owner, the court—[I] don't know if it even has the ability to rule against her, because, in effect, she would be an owner displacing herself. That's the concern of the court. And I don't know how it's set up with her and her tenantship with respect to [the plaintiff]."

The plaintiff's counsel presented the court with the plaintiff's certificate of incorporation, bylaws, and rules and regulations, and directed the court to article 13 of the bylaws. Counsel argued, pursuant to article 13, that the homeowner loses the right to own shares under certain circumstances, including eviction. Cynthia DaCosta argued that she purchased shares of stock in the plaintiff for $2500 when she moved in. The court found that Cynthia DaCosta owns twelve shares of stock in the plaintiff. The court took the matter on the papers.

On November 7, 2014, the court issued the following order, which constituted the judgment of the court. "The court heard the matter on its merits and, additionally, scheduled a hearing to entertain argument on a posttrial issue that had come to the court's attention in connection with a companion matter involving [the plaintiff]. That hearing was held on November 3, 2014. After hearing additional argument, the court rules as follows: The tenant, Cynthia DaCosta, by virtue of her ownership shares in [the plaintiff], is equal part owner and tenant and therefore falls outside of the strict statu-

tory guidelines for a summary process action. The court has reviewed the [plaintiff's] bylaws in their entirety and finds no language that would reduce tenant/owner [Cynthia] DaCosta's status to that of tenant only, which would then allow her to be the proper target of a summary process action. The motion for judgment of possession is denied." Thereafter the plaintiff appealed from the court's judgment.

On appeal, the plaintiff claims that the trial court improperly concluded that the defendants are not subject to a judgment of possession pursuant to § 21-80. The trial court determined that the plaintiff was not entitled to possession of lot 10 because there was no language in the plaintiff's bylaws that would reduce "tenant/owner [Cynthia] DaCosta's status to that of tenant only . . . ."[3] However, the present summary process action is controlled by the relevant General Statutes, not the plaintiff's bylaws.

"The ultimate issue in a summary process action is the right to possession." *Southland Corp.* v. *Vernon*, 1 Conn. App. 439, 443, 473 A.2d 318 (1984). Summary process is a statutory proceeding that is "intended to be summary and is designed to provide an expeditious remedy to the landlord seeking possession." *Prevedini* v. *Mobil Oil Corp.*, 164 Conn. 287, 292, 320 A.2d 797 (1973). We therefore examine the statutes applicable to summary process actions and to mobile manufactured home parks.

"[I]ssues of statutory construction raise questions of law, over which we exercise plenary review. . . . The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case, including the question of whether the language does so apply." (Internal quotation marks omitted.) *Williams* v. *Housing Authority*, 159 Conn. App. 679, 689,     A.3d     (2015).

"When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine the meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles

governing the same general subject matter . . . . A statute is ambiguous if, when read in context, it is susceptible to more than one reasonable interpretation." (Citation omitted; internal quotation marks omitted.) *Wilton Meadows Ltd. Partnership* v. *Coratolo*, 299 Conn. 819, 825, 14 A.3d 982 (2011).

Chapter 412 of our General Statutes is entitled "Mobile Manufactured Homes and Mobile Manufactured Home Parks. Park Owners and Residents." Section 21-80 provides in relevant part: "(a) An action for summary process may be maintained by the *owner* of a mobile manufactured home park against a mobile manufactured home *resident* . . . . (b) (1) Notwithstanding the provisions of section 47a-23, an owner may . . . maintain a summary process action against a resident who owns a mobile manufactured home only for one or more of the following reasons: (A) Nonpayment of rent, utility charges or reasonable incidental services charges . . . ."

Chapter 412 of the General Statutes provides definitions for the terms used therein. General Statutes § 21-64 provides in relevant part: "(5) '[r]esident' means a person who owns, or rents and occupies, a mobile manufactured home in a mobile manufactured home park . . . (7) '[o]wner' means a licensee or permittee or any person who owns, operates or maintains a mobile manufactured home park . . . (9) '[p]erson' means an individual, corporation, limited liability company, the state or any political subdivision thereof, agency, business trust, estate, trust partnership or association, two or more persons having a joint or common interest, and any other legal or commercial entity . . . ."

The parties agree that the defendants are residents of lot 10 in the subject mobile manufactured home park and that they have failed to pay rent pursuant to an oral lease. Cynthia DaCosta owns the mobile manufactured home situated on lot 10, and she owns twelve shares of stock in the plaintiff corporation. The question is whether such stock ownership makes her an owner of the mobile manufactured home park. We conclude that it does not.

The plain language of § 21-64 (7) provides that an owner is a *person* who owns, operates or maintains a mobile manufactured home park. Section 21-64 (9) defines person as a corporation, among other things. Section 21-64 (9) does not define owner as a shareholder of a corporation. "[I]t is the duty of the court to interpret statutes as they are written . . . and not by construction read into statutes provisions which are not clearly stated." (Internal quotation marks omitted.) *Athena Holdings, LLC* v. *Marcus*, 160 Conn. App. 470, 478, A.3d (2015). For this reason, we conclude that the defendants are subject to summary process for failing to pay rent.

Our conclusion that the defendants are subject to summary process proceedings pursuant to the plain language of §§ 21-64 and 21-80 is further supported by our summary process statutes. General Statutes § 47a-23 (a) provides in relevant part: "When the owner . . . desires to obtain possession . . . of any land . . . (1) when a rental agreement or lease of such property, whether in writing or by parol, terminates for any of the following reasons . . . (D) nonpayment of rent within the grace period . . . such owner or lessor . . . shall give notice to each *lessee* or occupant to quit possession or occupancy of such land . . . before the time specified in the notice for the lessee or occupant to quit possession or occupancy." (Emphasis added.) The plaintiff is the owner of the land where lot 10 is situated. The defendants are lessees of the land.

General Statutes § 47a-24 provides: "As used in this chapter, (1) 'lessee or occupant' includes a member or *shareholder of a cooperative housing corporation* who occupies a dwelling unit in such corporation's premises pursuant to an agreement of occupancy, whether or not it is designated as a lease or rental agreement, which agreement provides that, for breach by a member or *shareholder* of any provision of such agreement, the corporation shall have the legal remedies available to a landlord for breach by a tenant of a provision of a lease or rental agreement; and (2) 'owner or lessor' includes any such *cooperative housing corporation*."[4] (Emphasis added.) Pursuant to § 47a-24, Cynthia DaCosta, a shareholder in the plaintiff cooperative housing corporation, is subject to summary process as a lessee of the plaintiff.

We construe the statutes pertaining to mobile manufactured home parks and summary process "in accordance with the overriding principle that statutes should be construed, where possible, so as to create a rational, coherent and consistent body of law. See, e.g., *Doe* v. *Doe*, 244 Conn. 403, 428, 710 A.2d 1297 (1998) (we read related statutes to form a consistent, rational whole, rather than to create irrational distinctions); *In re Valerie D.*, 223 Conn. 492, 524, 613 A.2d 748 (1992) ([s]tatutes are to be interpreted with regard to other relevant statutes because the legislature presumed to have created a consistent body of law)." (Internal quotation marks omitted.) *Broadnax* v. *New Haven*, 284 Conn. 237, 249, 932 A.2d 1063 (2007). Moreover, this court previously has stated that summary process proceedings include "actions for possession by cooperative housing corporations against their members or *shareholders*, based on the breach of a lease by the members or *shareholders* . . . § 47a-24 . . . ." (Emphasis added.) *Southland Corp.* v. *Vernon*, supra, 1 Conn. App. 447.

We therefore conclude, as a matter of law, that the plaintiff is entitled to possession of lot 10 if the defen-

dants failed to pay rent in accordance with the parties' oral lease agreement. The trial court, however, failed to make factual findings on the basis of the evidence presented as to whether the defendants failed to comply with the terms of the subject lease. The matter, therefore, must be remanded to the trial court for further proceedings.

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

In this opinion the other judges concurred.

[1] On April 23, 2015, this court ordered the defendants to file their briefs on or before May 7, 2015. The defendants failed to file briefs as ordered. We, therefore, have considered this appeal on the basis of the brief, appendix, and oral argument of the plaintiff alone.

[2] The notice to quit was attached to the complaint as exhibit A. It was served on the defendants on May 16, 2014. The notice to quit stated, in relevant part, that on or before June 20, 2014, the defendants were to quit possession and occupancy of 46 Kenosia Avenue, lot 10, in Danbury for nonpayment of rent: "May 2014, in the amount of $425.00 (plus balance of rent for the month of January 2014, in the amount of $172.78, plus rent for the months of February, March and April 2014, in the amount of $425.00 each) for a total arrearage of $1,872.78." The notice to quit also stated: "Any partial payments tendered will be accepted for use and occupancy only and not for rent, with full reservation of rights to continue with the eviction action if the total of all partial payments made within 30 days of receipt of this notice does not equal the total arrearage stated above. All payments should be made to the attorney's office and not to the landlord."

[3] The trial court did not address the claims against Candra DaCosta.

[4] General Statutes § 47-202 provides in relevant part: "(9) 'Common interest community' means real property described in a declaration with respect to which a person, by virtue of his ownership of a unit, is obligated to pay for a share of (A) real property taxes on, (B) insurance premiums on, (C) maintenance of, (D) improvement of, or (E) services or other expenses related to common elements, other units or any other real property other than that unit described in the declaration. . . .

"(12) 'Cooperative' means a common interest community in which real property is owned by an association, each of whose members is entitled by virtue of his ownership interest in the association to exclusive possession of a unit."