[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In this summary process action, the plaintiff, Fairmount Heights Associates L.P., seeks to evict the defendants, Rosa Phiffer and Matthew Kimbrough, for alleged violations of General Statutes §§ 47a-11(g)[1] and 47a-15 (C).[2] Under the Section 8 federally subsidized housing program, the defendant Phiffer leases a dwelling unit from the plaintiff, located at 151 Dorchester Avenue, Waterbury, Connecticut. On April 23, 1997, the plaintiff caused a notice to quit to be served on the defendants. The notice called for the defendants to quit possession on or before May 7, 1997, and also contained the following language:
 Any money received after this Notice to Quit will be accepted for use and Occupancy only and does not affect any of the rights of the Landlord or the Tenant in any Summary Process Action now or pending to be brought in the future. You have the right to present a defense.
 If you remain in the premises on the date specified herein for termination, we may seek to enforce the termination only by bringing a judicial action, at which time you may present a defense.
 You are advised that you have ten (10) days within which to discuss this proposed termination of tenancy with the management of Country Village Apartments . . . .
The defendants did not vacate the premises. This action followed.
The defendant Phiffer has filed a motion to dismiss, claiming the court lacks subject matter jurisdiction because the notice to quit is equivocal.[3] "A motion to dismiss . . . `properly CT Page 8391 attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court.'" (Emphasis in original.) Gurliacci v. Mayer, 218 Conn. 531, 544, 590 A.2d 914
(1991). "A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction." Upson v.State, 190 Conn. 622, 624, 461 A.2d 991 (1983).
The issue raised by the defendant's motion to dismiss concerns the legal sufficiency of the notice to quit in light of the requirements of § 47a-23 and 24 C.F.R. § 880.607 (c). A notice to quit is the basis for the commencement of a summary process action involving residential property; Webb v. Ambler,125 Conn. 543, 552-53, 7 A.2d 228 (1939); and a "proper notice to quit is a jurisdictional necessity" in a summary process action. Lampasonav. Jacobs, 209 Conn. 724, 729, 553 A.2d 175, cert. denied,492 U.S. 919, 109 S.Ct. 3244, 1061 L.Ed.2d 590 (1989).
The requirements for a notice to quit are set forth in General Statutes § 47a-23.[4] General Statutes § 47a-23
(e) provides that: "A termination notice required pursuant to federal law and regulations may be included in or combined with the notice required pursuant to this section and such inclusion or combination does not thereby render the notice required pursuant to this section equivocal, provided the rental agreement or lease shall not terminate until after the date specified in the notice for the lessee or occupant to quit possession or occupancy or the date of completion of the pretermination process, whichever is later." 24 C.F.R. § 880.607, applicable to this property, reads in pertinent part: "(c) Termination notice. (1) The owner must give the family a written notice of any proposed termination of tenancy, stating the grounds and that the tenancy is terminated on a specified date and advising the family that it has an opportunity to respond to the owner."
As discussed supra, the notice called for the defendants to quit possession on or before May 7, 1997. The defendant does not dispute that this quit date complied both with state and federal law. The notice also stated: "You are advised that you have ten (10) days within which to discuss this proposed termination of tenancy with the management of Country Village Apartments . . . ." "The purpose of this [pre-termination notice] is to provide a grace period in which a tenant may correct the wrongful conduct that prompted the initiation of the termination proceedings."Jefferson Garden Associates v. Greene, 202 Conn. 128, 146, CT Page 8392520 A.2d 173 (1987). Again, the defendant does not dispute that this clause complied with state and federal law.
The defendant argues, however, that the clause "[a]ny money received after this Notice to Quit will be accepted for use and Occupancy only" renders the notice to quit fatally defective. The defendant contends that "this reservation is inconsistent with the substance of the federal termination notice, informing the tenants of their right to discuss this proposed termination of tenancy with the management of Country Village Apartments within 10 days, and renders the notice equivocal . . . because use and occupancy is not due during the term of the lease. If the notice to quit purports to terminate the lease on the quit date (May 7th), then any payment made by the Defendant prior to that date would be for rent, not use and occupancy."
"[J]udicial appraisal of a landlord's compliance with both state and federal requirements for notices of termination must reflect the purposes that the notices were meant to serve. As we have held in other contexts, in which regulatory and constitutional rights were also implicated; State v. Godek,182 Conn. 353, 359-60, 438 A.2d 114 (1980), cert. denied,450 U.S. 1031, 101 S.Ct. 1741, 68 L.Ed.2d 226 (1981); not every deviation from the strict requirements of either statutes or regulations warrants dismissal of an action for summary process. When good cause for termination of a lease has clearly been shown, and when notices of termination have been sent in strict compliance with statutory timetables, a landlord should not be precluded from pursuing summary eviction proceedings because of hypertechnical dissection of the wording of the notices that he has sent."Jefferson Garden Associates v. Greene, supra, 202 Conn. 145; seeThomas E. Golden Realty Co. v. Society for Savings,31 Conn. App. 575, 580, 626 A.2d 788 (1993).
Here, the notice clearly stated good cause for termination of the lease and was sent in strict compliance with the statutory timetables. The notice also reflected the purpose for which it was served — to evict the defendants — and provided a period during which the defendants might cure the cause for their eviction, in accordance with C.F.R. § 880.607(c). The addition of the language "[a]ny money received after this Notice to Quit will be accepted for use and Occupancy only" does not alter this. "The admonition serves two useful purposes. It avoids misleading tenants who tender late payments and it insulates the summary process action from being flawed by the acceptance of CT Page 8393 rent after commencement of summary process. Borst v. Ruff,137 Conn. 359, 361.62, 77 A.2d 343 (1950). `If, as the landlords claimed, the lease had already been terminated, they had a right to refuse a belated tender of rent, and to notify the tenant that it would be accepted only as compensation for use and occupation. If the tenant paid the money after that notification, the status quo was preserved.'Casner v. Resnik, 95 Conn. 281, 287, 111 A. 68 (1920). Moreover, in addition to use and occupancy, the prefixed language seeks to set off late tenders against costs and attorneys' fees, both of which are recoverable under General Statutes §§ 47a-26d and 47a-4
(a)(7)." Zitomer v. Palmer, 38 Conn. Sup. 341, 344,446 A.2d 1084 (App. Sess. 1982), cited with approval in O P Realty v.Santana, 17 Conn. App. 314, 318-319, 551 A.2d 1287, cert. denied,210 Conn. 812, 556 A.2d 610 (1989).
The reality is that between the time the notice to quit is served and the end of the period during which the defendants may cure the cause for their eviction, the parties are very much in legal limbo. On the one hand, the plaintiff has served the defendants with a notice to quit which classically has been the most unequivocal of acts terminating the lease agreement with the tenant. O'Brien Properties, Inc. v. Rodriguez, 215 Conn. 367,372, 576 A.2d 469 (1990). On the other hand, the notice states, as it must pursuant to 24 C.F.R. § 880.607 (c), that the defendants, in effect, may nullify the termination by curing its causes. The plaintiff landlord will presumably be unable to predict with any certainty what course the defendants will choose. Allowing the former to protect the legal efficacy of the notice to quit with the admonition that "[a]ny money received after this Notice to Quit will be accepted for use and Occupancy only" does not subvert the purpose that the notice was meant to serve, negate that good cause for the termination has been stated clearly or alter the fact that the notice has been served in strict compliance with the statutory timetables — the test for compliance prescribed in Jefferson Garden Associates v. Greene,supra, 202 Conn. 145.
In determining whether a notice is sufficient, the court should consider the entire communication. Zullo v. Smith,179 Conn. 596, 604, 427 A.2d 409 (1980). That the additional language in the notice to quit is not prescribed by General Statutes §47a-23 or the federal regulation is not fatal since "not every deviation from the strict requirements of either statutes or regulations warrants dismissal of an action for summary process."Jefferson Garden Associates v. Greene, supra, 202 Conn. 145. It CT Page 8394 is the federal regulation, not the admonition sanctioned inZitomer v. Palmer, supra, 38 Conn. Sup. 344, which provides "mixed messages" in the notice to quit — that the tenancy is terminated unless the tenant cures the cause for the termination by the date stated in the notice. For this reason, this court disagrees with the conclusion reached by Judge Tierney inStratford Housing Authority v. Reese, Superior Court, judicial district of Fairfield, Housing Session, No. SPBR 9411 28443 (April 11, 1995) and in First Baptist Housing of Bridgeport, Inc.v. Boager, Superior Court, judicial district of Fairfield, Housing Session, No. SPBR 9411 28392 (February 21, 1995), and denies the defendant's motion to dismiss.
BY THE COURT
Bruce L. LevinJudge of the Superior Court